Agnes L. MORSE, Plaintiff-Appellant,

v.

**ELMIRA COUNTRY CLUB,**
Defendant-Appellee.

**No. 269, Docket 84–7547.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 18, 1984.

Decided Dec. 28, 1984.

Harold A. Kurland, New York City (Nixon, Hargrave, Devans & Doyle, of counsel) for defendant-appellee.

Charles Sovel, Philadelphia, Pa. (Freedman & Lorry, P.C., Philadelphia, Pa., of counsel) for plaintiff-appellant.

Before NEWMAN, CARDAMONE and DAVIS,* Circuit Judges.

DAVIS, Circuit Judge:

In this diversity case Agnes L. Morse ("plaintiff") appeals from a decision of the District Court for the Western District of New York, Telesca, J., dismissing her complaint for failure to serve process properly within the period of the statute of limitations. 102 F.R.D. 199 (W.D.N.Y.1984). At issue is the effect of the new federal rule governing service of process by mail, Fed.R.Civ.P. 4(c)(2)(C)(ii),[1] in a diversity-of-citizenship case in which the state statute of limitations applies. We hold that plaintiff served process according to the method prescribed by the rule within the limitations period established by New York law. We therefore reverse the district court's judgment and remand for further proceedings.

## I

Plaintiff alleges in her complaint that on June 28, 1980, she was injured on a dance floor owned and negligently maintained by appellee Elmira Country Club ("defendant"). Plaintiff filed her complaint on May 23, 1983. On May 25, 1983, plaintiff's attorney sent to defendant, by certified mail, copies of a summons, the complaint, and a notice with attached acknowledgment forms. Defendant received the materials on May 28, 1983.[2]

Defendant never returned the acknowledgment. Over two months later, on August 5, 1983, defendant's attorney informed plaintiff that the acknowledgment would not be returned, and that plaintiff should proceed with the alternate form of personal service prescribed by Rule 4(c)(2)(C)(ii). Plaintiff served defendant personally on August 30, 1983, three years and 63 days after the claim first arose.

Soon thereafter, defendant filed a motion to dismiss the action pursuant to Fed.R.Civ.P. 12(b). In support of its motion, defendant pointed to N.Y.Civ.Prac.L. § 214(5) (McKinney 1973) ("CPLR"), which provides that the statute of limitations for personal injury actions (with exceptions not now pertinent) is three years. Under CPLR § 203(b)(1), a claim is interposed for statute

---

* Honorable Oscar H. Davis of the United States Court of Appeals for the Federal Circuit, sitting by designation.

1. Rule 4(c)(2)(C) states:

   A summons and complaint may be served upon a defendant of any class referred to in paragraph (1) or (3) of subdivision (d) of this rule—

   \*   \*   \*   \*   \*   \*

   (ii) by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to form 18–A and a return envelope, postage prepaid, addressed to the sender. If no acknowledgment of service under this subdivision of this rule is received by the sender within 20 days after the date of mailing, service of such summons and complaint shall be made under subparagraph (A) or (B) of this paragraph in the manner prescribed by subdivision (d)(1) or (d)(3).

   Subparagraph (A), referred to in this provision, authorizes personal service on defendant by any adult not a party to the case. If the defendant fails to acknowledge receipt of mail service, the court may, absent a demonstration of good cause for the failure, order defendant to pay the costs of personal service. Fed.R.Civ.P. 4(c)(2)(D).

   The Supreme Court promulgated these amendments to Rule 4 to take effect on August 1, 1982. In response to comments from the bar, Congress passed legislation delaying the effective date of the amendments until October 1, 1983. Pub.Law No. 97–227, 96 Stat. 246 (1982). Congress then modified the Supreme Court's proposal and enacted the rule involved here, effective February 26, 1983. Federal Rules of Civil Procedure Amendments Act of 1982, Pub.Law No. 97–462, 96 Stat. 2527 (1982).

2. Defendant points out that the postal receipt contained in Appellant's Appendix is not a part of the record on appeal as it was never filed with the district court. According to the rule, however, certified mail is unnecessary, and plaintiff need not have produced a receipt at all. Defendant admits that plaintiff's attorney mailed the documents on May 25. In the absence of any contrary indication we assume delivery in due course.

of limitations purposes when "the summons is served upon defendant." Defendant argued that the action was not begun (for limitations purposes) until August 30, 1983, when plaintiff effected personal service. This was about two months beyond the third anniversary of the date on which the claim arose.[3]

The district court ordered the complaint dismissed primarily on the authority of *Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). Under *Walker,* state law determines when an action is commenced for limitations purposes in a diversity action in federal court. The district court ruled that the action in this case did not begin until personal service of process on August 30, 1983. The court concluded:

> Unlike *Hanna v. Plumer* [380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8] *supra,* the plaintiff in this case did not follow the federal rules explicitly only to find herself out of compliance with state law. Here, as in *Ragan* and *Walker, supra,* there is no "direct conflict" between Fed. R.Civ.P. 4(c) and state law. Consequently *Erie R. Co. v. Tompkins* 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188] (1983) requires that state law be applied and the action be dismissed as untimely pursuant to New York C.P.L.R. Section 214. 120 F.R.D. at 201. [Footnote omitted.]

The court noted that the dismissal effectively rewarded defendant for noncompliance with the Federal Rules, but considered the ultimate fault to lie with plaintiff for attempting service by mail so close to the statute of limitations deadline.

## II

This case presents two issues for our consideration: one, whether the method of serving process by mail, contained in Rule 4(c)(2)(C)(ii), is acceptable in a diversity case governed by New York's statute of limitations; and, the other (if the rule applies), whether plaintiff's actions constituted compliance with that rule within the limitations period.

As in all diversity litigation, the fount of our consideration must be *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The rationale of that decision was, first, that federal courts should obtain results substantially similar to those reached by state courts considering the same cause of action, and, second, that federal courts should avoid application of federal law if that application would significantly encourage forum shopping by prospective out-of-state litigants. *Walker v. Armco Steel, supra,* 446 U.S. at 747, 100 S.Ct. at 1983; *Hanna v. Plumer,* 380 U.S. 460, 467, 85 S.Ct. 1136, 1141, 14 L.Ed.2d 8 (1965).

■ Fortunately, the Supreme Court's application of the *Erie* analysis to specific problems has created some guideposts for resolution of the issues in this case. Foremost among these guideposts is the rule of *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), that state statutes of limitations govern state-law claims in federal diversity cases. The Supreme Court has also given help in two other areas of concern here. These are: (1) whether state law or federal law determines the point at which a claim is interposed for statute of limitations purposes; and (2) assuming that applicable law requires service of process in order to interpose a claim, whether and in what circumstances state or federal law determines the manner by which process should be served.

As the district court noted, a significant case on the point at which a plaintiff effectively tolls limitations by interposing a diversity claim is *Walker v. Armco Steel, supra.* In *Walker,* the plaintiff brought a diversity products liability action against the manufacturer of an allegedly defective nail. The complaint was filed within the limitations period, but service of process was delayed until after the statute ran.

---

**3.** Defendant concedes that New York law arguably adds 60 days to a statute of limitations period if the complaint is filed in federal district court. *See,* CPLR § 203(b)(5); *Aro v. Lichtig,* 537 F.Supp. 599 (E.D.N.Y.1982). Personal service was still three days after the extended deadline. Because of our holding in this case we need not, and do not, pass on defendant's argument that the 60 day extension does not apply under amended Rule 4.

Applicable Oklahoma law, similar to that of New York, deemed an action commenced upon service of process. That plaintiff, however, relied upon Fed.R.Civ.P. 3 for the proposition that "[a] civil action is commenced by filing a complaint with the court." The Court ruled that the state law controls the point at which a suit is considered commenced for statute of limitations purposes. The Court found the Oklahoma rule to be "an 'integral' part of the statute of limitations .... As such, the service rule must be considered part and parcel of the statute of limitations." 446 at 752 (footnote omitted). On the other hand, Rule 3 merely "governs the date from which various timing requirements of the Federal Rules begin to run, but does not affect state statutes of limitations." *Id.* at 751.

As for the manner of serving process, the Supreme Court held in *Hanna v. Plumer, supra,* that plaintiffs may serve process in the manner specifically provided by the Federal Rules even if state law mandates a contrary method of service. In *Hanna,* another diversity case, plaintiff served the executor of an estate by leaving a summons at his home with his wife in accordance with Rule 4(d). The applicable state law required personal service on executors. The Court ruled that the concerns which prompted the *Erie* decision did not require application of state law:

> [I]t is difficult to argue that permitting service of defendant's wife to take the place of in-hand service of defendant himself alters the mode of enforcement of state-created rights in a fashion sufficiently "substantial" to raise the sort of equal protection problems to which the *Erie* opinion alluded.

380 U.S. at 469, 85 S.Ct. at 1142.[4]

### III

■ The *Walker* and *Hanna* decisions demonstrate that (a) the running of limita-

tions in this case is governed by the New York rule that limitations is tolled only by service of process, but (b) the Federal Rules control the proper method of effecting service. Under *Walker,* New York's CPLR §§ 203(b)(1) and 214(5), *supra,* require dismissal if plaintiff did not properly serve process upon defendant within the three-year limitations span. Under *Hanna,* Rule 4(c) ("Process"; "Service") determines the validity of the manner in which plaintiff served process. In deciding the scope of Rule 4(c), the district court seems to have been searching for a "direct conflict" between Rule 4(c) and state law (see quotation *supra*). We think that, in this respect, the court misread the following sentence in the *Walker* opinion: "Since there is no direct conflict between the Federal Rule and the state law, the *Hanna* analysis does not apply." 446 U.S. at 752, 100 S.Ct. at 1986 (footnote omitted). Unlike *Hanna, Walker* dealt with a case in which there was no federal rule on the point before the Court. This is made clear by the statement that "The first question must therefore be whether the scope of the Federal Rule [there, Rule 3] in fact is sufficiently broad to control the issue before the Court" (446 U.S. at 749–50, 100 S.Ct. at 1984–85), as well as by the later reference to the "absence of a controlling federal rule" (446 U.S. at 753, 100 S.Ct. at 1986). Because *Walker* held Rule 3 to be narrower than the plaintiff in that case suggested, the Federal Rules and *Hanna* did not come into play. Cf. *Ringrose v. Engelberg,* 692 F.2d 403 (6th Cir.1982) (in which the court applied the federal rule, without engaging in a *Hanna*-type analysis, when the federal rule and state law were to the same effect). Here, on the other hand, we deal with a specific rule on mail service, adopted

---

**4.** That the Supreme Court intended its holding to extend in diversity litigation to other state methods of effecting service is shown by *Hanna's* opening sentence: "The question to be decided is whether, in a civil action where the jurisdiction of the United States district court is

based upon diversity of citizenship between the parties, service of process shall be made in the manner prescribed by state law or that set forth in Rule 4(d)(1) of the Federal Rules of Civil Procedure." 380 U.S. at 461, 85 S.Ct. at 1138.

by Congress, and applicable to this case.[5] The problem, then, is the meaning and application of that rule—to see its bearing and scope, not to inquire whether that rule happens to comport with state law.[6]

## IV

The remaining question is whether plaintiff complied with Rule 4(c)(2)(C)(ii) within the limitations period, and thus satisfied the state-law requirement that she serve process before the end of the statute of limitations period.

A. There is no doubt that defendant received mail service, and was aware of that service, by May 28, 1983—well before the limitations period ended. This fell within the precise wording of Rule 4(c)(2)(C). The literal language of the rule states: "A summons and complaint may be served upon a defendant ... (ii) by mailing a copy of the summons and the complaint (by first class mail, postage prepaid) to the person to be served," together with two copies of a notice and acknowledgment form with a stamped envelope. Plaintiff's actions in this case conformed with these exact requirements of the rule, and all the necessary steps were complete before the end of May 1983, prior to the statute of limitations deadline. "Service is complete when all the required acts are done." 72 C.J.S. *Process* § 43 (1951).

It is said, however, that the mail service was wholly ineffective because defendant refused to acknowledge it (as defendant was required to do). This result, we are told, is mandated by the very next sentence of the rule which says: "If no acknowledgment of service under this subdivision of this rule [relating to service by mail] is received by the sender within 20 days after the date of mailing, service of such summons and complaint shall be made" by personal service. See footnote 1, *supra*.[7]

■ We do not agree that the rule should be read to void a received-but-unacknowledged mail service, or to substitute the requirement of personal service in lieu of an acknowledged mail service. First, the words do not say in terms that a received-but-unacknowledged mail service is ineffective, nor do they command personal service as a prerequisite to effective service by mail (if mail service is unacknowledged). What Rule 4(c) states is: "If no acknowledgment of *service* [by mail] ... is received ... *service* shall be made under subparagraph (A) or (B)" (emphasis added). Thus, the rule calls, not for personal service as a completion of or substitution for the mailed service, but for a *second* (personal) service should defendant ignore the rule by refusing to return the acknowledgment. It may well be that, under the literal terms of Rule 4(g), plaintiff could not make *proof* of service without the subsequent personal service.[8] However, service

5. Once the Supreme Court in *Hanna* determined that the Federal Rule displaced the state rule, the Court proceeded to delve into the validity of the rule under the Constitution and the proviso of the Rules Enabling Act that the rules "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072 (1982). 380 U.S. at 471–73, 85 S.Ct. at 1143–45; *cf. Walker*, 446 U.S. at 752 n. 14, 100 S.Ct. at 1986 n. 14 (no need to examine validity of rule since state law held controlling). Neither party has here argued against the validity of the rule, nor do we see any defect. As for the constitutionality of Rule 4(c)(2)(C)(ii), the rule guarantees that defendant will receive notice either through mailed or personal service. *See* Part IV, *infra*. With regard to the Enabling Act, we are hard pressed to discover how the rule at issue could run afoul of that statute any more than could the rule considered in *Hanna*.

6. In fact, New York does not allow mail service in the manner authorized by Rule 4(c)(2)(C)(ii).

7. Rule 4(j) requires that service be normally made "within 120 days after the filing of the complaint." The purpose of this requirement is to impose a definite time limit on the period between filing of the complaint and service of process. Prior to that rule, the time period was left to the courts' discretion, and "[r]esults swayed with the facts as a tall tree sways in a high wind." Siegel, *Practice Commentary on Amendments to Federal Rule 4*, 96 F.R.D. 88, 101 (1983).

8. Rule 4(g) states: "If service is made under subdivision (c)(2)(C)(ii) of this rule, return shall be made by the sender's filing with the court the acknowledgment received pursuant to such subdivision."

may be effective without a return. Rule 4(g) provides that "[f]ailure to make proof of service does not affect the validity of the service." *See, M. Lowenstein & Sons v. American Underwear Mfg. Co.*, 11 F.R.D. 172 (E.D.Pa.1951); *Kertes Mfg. Corp. v. Speidel Corp.*, 93 F.Supp. 483 (S.D.N.Y. 1949); 4 Wright & Miller, *Federal Practice and Procedure*, § 1130 at 541–42 (1969) (and additional cases cited therein). The apparent purpose of the second service—to provide a foundation for the return—is another indication that it is irrelevant for valid and effective service.

Above all, strong factors of justice and equity push toward reading Rule 4(c) as providing for effective mail service where, as here, the recipient actually receives the mail service but refuses to acknowledge it properly. We have been given no adequate explanation why the acknowledgment was withheld here, nor any proper basis for nullifying mail service deliberately left unacknowledged. Certainly, the desire to harass or inconvenience plaintiff, or to delay the tolling of limitations, should not be an excuse or a reason to interpret the rule against plaintiff. There is, in other words, no rationale for allowing a properly served defendant deliberately and willfully to postpone the ending of limitations by simply refusing to do what the rule calls upon him to do. In short, Congress would have no ground for providing that proper and known mail service would become ineffective simply because the defendant, without reason, acted like the dog in the manger.[9]

Defendant argues nevertheless that service was not complete until the date of personal service, citing *Armco Inc. v. Penrod-Stauffer Bldg. Systems, Inc.*, 733 F.2d 1087 (4th Cir.1984); *Billy v. Ashland Oil Inc.*, 102 F.R.D. 230 (W.D.Pa.1984); *Federal Deposit Ins. Corp. v. Sims*, 100 F.R.D. 792 (N.D.Ala.1984); *Jaffe v. Federal Reserve Bank of Chicago*, 100 F.R.D. 443 (N.D.Ill.1983). These cases are inapposite. *Billy v. Ashland Oil, supra*, is illustrative. Billy attempted service pursuant to Rule 4(c)(2)(C)(ii) by mailing the appropriate documents to Ashland. When Ashland did not acknowledge service, Billy served process according to the Pennsylvania rules, relying upon Rule 4(e), which allows service according to state practice. The court ruled, however, that plaintiff could not serve process under Rule 4(e) because it is not one of the methods authorized for following up mail service under Rule 4(c)(2)(C)(ii). The court merely held that a particular personal service, as opposed to any other method of service, was required in order to comply with the second sentence of the rule; the court never said, as defendant claims, that personal service was necessary for mailed service to become effective.

B. Our conclusion is consonant with a comparison of Rule 4(c)(2)(C) and the corresponding California rule, upon which many of the recent amendments were based.[10] Cal.Civ.Proc.Code § 415.30(a) (West 1973) is in all pertinent respects identical to the first half of Rule 4(c)(2)(C)(ii). Cal.Civ. Proc.Code § 415.30(d) is similar in effect to the second portion of the federal rule, and calls for the same procedure in the event defendant fails to acknowledge service. Cal.Civ.Proc.Code § 415.30(c) provides: "Service of summons pursuant to this section is complete on the date a written acknowledgment of receipt of summons is *executed*, if such acknowledgment thereafter is returned to sender." (Emphasis

---

**9.** Rule 4(c)(2)(D) indicates displeasure with such unfounded refusal to acknowledge, by providing that "unless good cause is shown for not doing so the court shall order the payment of the costs of personal service by the person served if such person does not complete and return within 20 days after mailing the notice and acknowledgment of receipt of summons." This penalty, designed for deterrence, should not be undermined by permitting a defendant who receives mailed service timely but declines to acknowledge it thereby to acquire a statute of limitations defense. Congress would not intend to reward and punish the recalcitrant defendant in one legislative stroke.

**10.** *See,* Analysis by Congressman Edwards of the Federal Rules of Civil Procedure Amendments Act of 1982, *supra,* 128 Cong.Rec. at H–9850, 96 F.R.D. at 119 ("H.R. 7154 provides a system of service by mail similar to the system now used in California").

added.) The California courts have determined that, absent extenuating circumstances, if service by mail comes before a time deadline, acknowledgment of its receipt is not executed, and personal service comes after, the service is too late. *Tandy Corp. v. Superior Court,* 117 Cal.App.3d 911, 173 Cal.Rptr. 81 (Ct.App.1981).

Congress conspicuously excluded a provision corresponding to § 415.30(c), quoted *supra,* from the new federal rule. The history of the rule confirms that this deletion was intentional. As originally promulgated by the Supreme Court, the provision for service of process by mail required delivery by certified or registered post.[11] The rule prohibited entry of a default judgment based on mailed service unless the record contained a postal receipt indicating defendant's acceptance or, significantly, a returned envelope showing defendant's refusal of mail service. If defendant refused delivery, the rule merely required that plaintiff redeliver the appropriate forms by first-class mail.

Congress rejected this system, at least in part because of difficulties in ascertaining whether the mail had been refused or merely went unclaimed. In the latter situation, if defendant changed addresses or was otherwise unreachable by mail, even subsequent delivery by first-class mail might not adequately provide defendant with notice of the pending suit. *See,* Analysis by Congressman Edwards of the Federal Rules of Civil Procedure Amendments Act of 1982, 128 Cong.Rec. H–9850, H–9850 & n. 11 (daily ed. Dec. 15, 1982), *reprinted*

*in* 96 F.R.D. 116, 118–19. Congress substituted the current system, of mail delivery followed by acknowledgment or personal service, to insure that defendant would always receive actual notice.

Under the original version of the rule, effective service was complete upon the first mailing; all defendant needed to produce in order to obtain a default judgment was the returned envelope plus another mail delivery. When Congress changed the particulars of the initial mailing and substituted personal service as a follow-up, it gave no indication that it intended to change the prior view that mail service was effective where the recipient received the mail and accordingly obtained actual notice. That is our position in this case, a position consistent with the wording and legislative history of Rule 4.[12]

■ C. Defendant also points to one error in the form of plaintiff's notice, and argues that this error rendered the statement "incorrect and confusing." Form 18–A, which sets forth the contents of the notice and acknowledgment to be included in all mailed service, contains the following paragraph:

> If you do complete and return this [acknowledgment] form, you (or the party on whose behalf you are being served) must answer the complaint within 20 days. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

By what appears to be a transcription error, plaintiff's form reads: "If you do *not*

---

11. Rule 4(d)(8), as promulgated by the Supreme Court, stated in part:

> Service of a summons and complaint ... may be made ... *by registered or certified mail,* return receipt requested and delivery restricted to the addressee. Service pursuant to this paragraph shall not be the basis for the entry of a default or a judgment by default unless the record contains a return receipt showing acceptance by the defendant *or a returned envelope showing refusal of the process by defendant.* If delivery of the process is refused, the person serving the process promptly upon the receipt of such refusal, shall mail to the defendant by first class mail a copy of the summons and complaint and a notice that

despite such refusal the case will proceed and that judgment by default will be entered against him unless he appears to defend the suit.

93 F.R.D. 255, 256–57 (1982) (emphasis added).

12. We recognize that under our construction of Rule 4(c)(2)(C)(ii) a hearing will be required in some cases to determine whether the mailed complaint was timely received, a hearing that personal service was arguably designed to avoid. However, such a hearing will occur in any event whenever the plaintiff seeks costs of personal service because of defendant's unfounded refusal to acknowledge receipt of mailed service, Rule 4(c)(2)(D).

complete and return this form ...." We are very reluctant to nonsuit a plaintiff for so minor and obviously incorrect a deviation. Rule 4(c)(2)(C)(ii) supports this conclusion, since it requires only substantial compliance with the form, and not an absolutely perfect rendering. Moreover, plaintiff's error should have made defendant more alert than would the version contained in the form; this is not a case in which a deviation from the form lulled the recipient into inaction. *Cf. Great Plains Crop Management, Inc. v. Tryco Mfg. Co.,* 554 F.Supp. 1025, 1028 (D.Mont.1983) (motion to quash summons denied despite failure of summons to set forth time available for defendant to answer complaint). This single, minor, apparently unintentional deviation, which had no significant impact on defendant's conduct, is not ground for voiding the mail service.

■ D. We add explicitly that we do not accept plaintiff's argument that the new Rule 4(j), which requires plaintiffs to serve process within 120 days following the filing of the complaint (see footnote 7, *supra*), effectively adds 120 days to the applicable state statute of limitations if the complaint has been filed within the limitations period. This is a dubious proposition at best in light of *Walker, supra.* Moreover, the legislative history of the amendments shows that Congress recognized the implications of *Walker* when it considered the amendments to Rule 4(c) (House Report, *supra,* 128 Cong.Rec. at H–9850 n. 14, 96 F.R.D. at 120 n. 14), and that Congress specifically considered and rejected the argument plaintiff now advances. *Id.* at H–9850 n. 15, 96 F.R.D. at 120 n. 15 ("The same result [dismissal] obtains even if service occurs within the 120 day period, if the service occurs after the statute of limitations has run").

■ For the foregoing reasons we hold that plaintiff served process upon defendant within the applicable limitations period. The judgment of the district court is therefore reversed and the case is remanded for further proceedings.

*Reversed and remanded.*