Madhukar M. DESHMUKH, et al., Plaintiffs,

v.

Walter G. COOK, et al., Defendants.

No. 84 Civ. 8986 (WCC).

United States District Court, S.D. New York.

March 18, 1986.

---

Schwartz Klink & Schreiber, P.C., New York City, for plaintiffs; Gregg M. Mashberg, John F. Harnes, of counsel.

Nathan M. Ferst, New York City, for defendants Walter G. Cook, Okapi Realty Co., Inc. and Oxford Development and Investors, Corp.

Walter J. Cook, pro se.

WILLIAM C. CONNER, District Judge.

Plaintiffs brought this action against Walter G. Cook, his father, Walter J. Cook, and two corporations allegedly controlled by them, Okapi Realty Co., Inc. ("Okapi") and Oxford Development and Investors, Corp. ("Oxford"). Plaintiffs seek to recover compensatory and punitive damages for losses they suffered as a result of investing in real estate tax shelters engineered by the Cooks through the two corporations. Plaintiffs allege that the Cooks induced them to invest in these ventures by failing to disclose to them that the tax shelters were mere shams which had no assets, and by falsely representing to them that they would receive substantial returns on their investments, as well as substantial tax write-offs.

Defendants did not answer or move against the complaint and did not appear at the initial pretrial conference scheduled by the Court. Accordingly, plaintiffs sought and obtained from the Court an order directing defendants to show cause why a default judgment, including $150,500 in compensatory damages and $1,000,000 in punitive damages, should not be entered against them. Defendants Walter G. Cook, Okapi, and Oxford did not appear in response to the order to show cause. Defendant Walter J. Cook did appear, but he was late in arriving, and the Court had already scheduled an inquest on plaintiffs' prayer for compensatory and punitive damages. Walter J. Cook was directed to appear at the hearing and show cause at that time.

Walter J. Cook appeared at the inquest, and advised the Court that he had no notice of the lawsuit until he was served with the order to show cause. Accordingly, I indicated that I would not enter a default judgment with respect to him. Walter J. Cook agreed to accept service of the complaint, and has since filed an answer to it.

Counsel for Walter G. Cook, Okapi, and Oxford also appeared at the hearing; Walter G. Cook himself did not appear. When questioned by the Court, counsel did not contest that Walter G. Cook had received the summons and complaint and the order to show cause, and could not explain why Walter G. Cook had failed to respond to them. Instead, counsel indicated that he had been retained solely to present defend-

ants' argument that the Court lacked personal jurisdiction over Walter G. Cook and the two corporations because plaintiffs had failed to serve them properly. After hearing argument from both sides, I rejected defendants' contention, and indicated that I would enter a default judgment against Walter G. Cook, Okapi, and Oxford. I also stated, however, that these defendants could submit additional arguments and authorities to me in the context of a motion for reconsideration.

Plaintiffs then proceeded to put in proof of their damages. Plaintiffs relied on: (1) the "well-pleaded allegations of the complaint," *see Trans World Airlines, Inc. v. Hughes,* 449 F.2d 51, 63 (2d Cir.1971), *rev'd on other grounds,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); (2) the testimony of Nirmalendu Srivastava, plaintiffs' investment adviser, who described his dealings with the defendants; (3) the testimony of John F. Harnes, an attorney for the plaintiffs, who described his attempts to give notice of the lawsuit and the pretrial proceedings to the defendants; and (4) previous judicial decisions in which Walter G. Cook was adjudged to have committed various frauds.

At the close of the hearing, I ruled that plaintiffs were entitled to the compensatory damages they had demanded, but that they had failed to demonstrate that they were entitled to punitive damages. Plaintiffs have asked me to reconsider that decision. They argue that their "well-pleaded allegations" that Walter G. Cook has previously promoted fraudulent investments, together with the fact that in the past courts have found that Walter G. Cook has engaged in serious misconduct, are sufficient to support the imposition of punitive damages. Defendants Walter G. Cook, Okapi, and Oxford have also asked me to reconsider my decision that mail service was properly made upon them. After carefully reviewing the parties' submissions, I reaffirm my previous decisions on both the issues of service and punitive damages.

## Discussion

### 1. Service on Walter G. Cook.

Plaintiffs attempted to serve Walter G. Cook pursuant to rule 4(c)(2)(C)(ii), Fed.R. Civ.P., by mailing a summons and complaint and an acknowledgment of service to him at his office at 545 Fifth Avenue in Manhattan. Cook does not deny that he received the papers, but notes that he did not sign the acknowledgment of service and did not return it to the plaintiffs.

Rule 4(c)(2)(C)(ii), Fed.R.Civ.P., provides that "[i]f no acknowledgment of service ... is received by the sender within 20 days after the date of mailing, service of such summons and complaint shall be made" by personal service pursuant to rule 4(d). Since the plaintiffs did not make follow-up personal service under rule 4(d), Walter G. Cook argues that the service by mail was ineffective, and concludes that the Court lacks personal jurisdiction over him.

Cook's position is inconsistent with the recent decision of our court of appeals in *Morse v. Elmira Country Club,* 752 F.2d 35 (2d Cir.1984). There, the court of appeals held that rule 4(c)(2)(C)(ii) should not be read to "void a received-but-unacknowledged mail service." *Id.* at 39. The court explained that the rule does not say that a received-but-unacknowledged mail service is ineffective, "nor do[es] [it] command personal service as a prerequisite to effective service by mail (if mail service is unacknowledged)." *Id.* Instead, the court stated that the purpose of the follow-up personal service is simply to provide a foundation for the return, and reasoned that since service can be effective without a return, follow-up personal service is not necessary for received-but-unacknowledged mail service to be valid and effective. *Id.*

The court also stressed that "strong factors of justice and equity" favor a finding of effective service where, as here, the recipient actually receives the mail service, but refuses to acknowledge it. *Id.* As in *Morse,* Cook has not given an "adequate explanation why the acknowledgment was withheld ..., nor any proper basis for nulli-

fying mail service deliberately left unacknowledged." *Id.* Since Cook does not deny that he received the mail service, I can only conclude that he refused to acknowledge service in order to inconvenience or harass the plaintiffs. The court of appeals made clear, however, that absent some showing of good cause, a recalcitrant defendant should not be accorded a windfall for acting like "the dog in the manger." *Id.; see also Gilliam v. Quinlan,* 608 F.Supp. 823, 829 n. 3 (S.D.N.Y.1985).

■ For all of these reasons, I conclude that plaintiffs' mail service upon Walter G. Cook was valid and effective, and that the Court has personal jurisdiction over him. Accordingly, on reconsideration, Walter G. Cook's motion to dismiss the complaint against him is denied.

### 2. Service on Okapi and Oxford.

As with Walter G. Cook, plaintiffs attempted to serve Okapi and Oxford, the corporate defendants, by mailing summonses and complaints and acknowledgments of service to them at their corporate headquarters at 545 Fifth Avenue. Like Cook, these defendants did not acknowledge service, and as with Cook, plaintiffs did not make follow-up personal service.[1] Okapi and Oxford therefore argue that the mail service upon them was ineffective for the same reasons suggested by Cook above.

■ These arguments must be rejected for the same reasons I have just explained. Walter G. Cook has averred that he is an officer of both Okapi and Oxford, Affidavit of Walter G. Cook dated July 10, 1985 at 1, and therefore he is authorized to accept service on behalf of both corporations. Since Cook is an officer of the two corporations, and since, as noted above, he does not deny that he received mail service of the summons and complaint, Okapi and Ox-

ford also cannot deny that they, through Cook, received service. Accordingly, under *Morse,* the mail service upon the two corporations is valid and effective, even though plaintiffs did not follow up with personal service upon officers or agents of the corporations. For this reason, upon reconsideration, the corporate defendants' motion to dismiss is denied.

### 3. Plaintiffs' Claim for Punitive Damages.

In their motion for reconsideration of my decision not to impose punitive damages on defendants, plaintiffs argue that I neglected to consider their "well-pleaded allegations" that Walter G. Cook had previously promoted fraudulent investments and the fact that in the past several courts have found Cook guilty of defrauding creditors and investors. *See Meyerson v. Werner,* 683 F.2d 723, 728 (2d Cir.1982); *In re Ellison Assocs.,* No. 81 Civ. 5841 (CSH), slip op. (S.D.N.Y. Sept. 28, 1983); *In re Chanticleer Assocs., Ltd.,* No. 77 B 1463, slip op. (S.D.N.Y. July 28, 1978); *Eastern Dev. & Inv. Corp. v. City of San Antonio,* 557 S.W.2d 823 (Tex.Civ.App.1977). On reconsideration, I reaffirm my previous decision not to impose punitive damages.

■ First, I reject plaintiffs' argument that I should have taken the allegations of the complaint as true in deciding whether to impose punitive damages. Plaintiffs are correct that our court of appeals has held that when a defendant defaults, it admits "every 'well-pleaded allegation' of the complaint." *Trans World Airlines, Inc. v. Hughes,* 449 F.2d at 63. However, that rule is limited in its reach—the factual allegations of the complaint relating to liability are taken as true, but the allegations relating to the amount of damages are not. *See Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.,* 722 F.2d 1319, 1323 (7th Cir.1983); *Au Bon Pain Corp. v. Ar-*

---

1. Before serving the corporate defendants by mail, plaintiffs did attempt to make personal service upon the corporate defendants by delivering a copy of the summons and complaint to a receptionist, who according to plaintiffs, said she was authorized to accept service on behalf of the corporations. The corporate defendants contend that no receptionist was authorized to accept service, and therefore argue that the personal service was invalid. In light of my conclusion that the mail service was valid, I need not consider the effectiveness of the prior personal service on the receptionist.

*tect, Inc.,* 653 F.2d 61, 65 (2d Cir.1981); *Geddes v. United Financial Group,* 559 F.2d 557, 560 (9th Cir.1977); 10 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil § 2688, at 444 (2d ed. 1983). Thus, our court of appeals has stated that

> "a default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability" ..., [b]ut it is clear that the fact of liability alone does not establish a right to a specific form of relief. Accordingly, unless the amount of damages are absolutely certain, the court is required to make an independent determination of the sum to be awarded.

*SEC v. Management Dynamics, Inc.,* 515 F.2d 801, 814 (2d Cir.1975) (quoting *Trans World Airlines, Inc. v. Hughes,* 449 F.2d at 69).

In order to make an independent determination of damages, a court must of course hold an evidentiary hearing. Our court of appeals has stated a hearing is especially called for where a plaintiff seeks punitive damages, since they lie with the discretion of the court and depend upon the degree of wanton and willful conduct of the defendant. *Flaks v. Koegel,* 504 F.2d 702, 707 (2d Cir.1974). In directing that district courts hold hearings before imposing punitive damages, the court of appeals evidently contemplated that a plaintiff would be required to come forward with actual proof of wanton and willful conduct on the part of the defendant. If the court of appeals were content to permit a plaintiff to rely on the "well-pleaded allegations" of its complaint to support a prayer for punitive damages, it obviously would have seen no need for a hearing at all.

■ Thus, I conclude that the court of appeals' decision in *Flaks* required plaintiffs here to produce actual proof of wanton and willful conduct by defendants at the evidentiary hearing scheduled for that purpose. Plaintiffs could not merely rely on the allegations in their complaint that Walter G. Cook entered into the transactions at issue with an intent to deceive

them and with no intent of ever repaying them. I could take those "well-pleaded allegations" as true for the purpose of determining whether plaintiffs had made out a cause of action, but I cannot take them as true in assessing whether to impose compensatory or punitive damages.

Moreover, the evidence plaintiffs did adduce at the evidentiary hearing was woefully inadequate to support an award of punitive damages. The evidence established merely that Walter G. Cook solicited and received investments from plaintiffs, that he gave promissory notes totalling $150,500 to plaintiffs to cover those investments, and that he never repaid the notes to plaintiffs. As I stated at the close of the evidentiary hearing, that evidence, in and of itself, does not entitle plaintiffs to punitive damages.

That brings me to plaintiffs' second argument in support of their motion—that I should have considered the fact that in the past, other courts have found Walter G. Cook guilty of defrauding creditors and investors. Plaintiffs argue that from these previous decisions, I can properly infer that Walter G. Cook's actions in this case were part of a continuous and systematic pattern of fraud.

■ Plaintiffs are correct that a court can take judicial notice of the decisions in other proceedings; plaintiffs are also correct that Cook has a "long record of willful, contemptuous, and contumacious behavior." *See Meyerson,* 683 F.2d at 728. However, in view of plaintiffs' failure to produce actual proof of wanton and willful conduct on the part of defendants in the context of this case, I am reluctant to accord much weight to previous judicial determinations of Walter G. Cook's actions in other cases.

■ The fact that Cook committed fraud in the past might make it more likely that he committed fraud in this case. On the other hand, just because a defendant acted fraudulently on several prior occasions does not mean that he commits fraud every time he enters into a transaction. As I

stated at the evidentiary hearing, I have a suspicion that Walter G. Cook is an olympic-class swindler. But the imposition of punitive damages is an extraordinary event. It requires more than suspicion; it requires convincing proof of sufficient facts to satisfy the Court that it is using its punitive powers in a situation that merits them. Plaintiffs have not produced convincing proof that defendants' conduct in connection with the investment scheme in this case was so egregious as to call for a punitive award. In my view, the fact that Cook's past behavior has sometimes been beyond the pale is no substitute for the convincing proof plaintiffs should have adduced in this case. For all of these reasons, on reconsideration, plaintiffs' demand for punitive damages is denied.

*Conclusion*

In summary, on reconsideration, defendants' motion to dismiss the complaint for improper service and lack of personal jurisdiction is denied. Plaintiffs' prayer for punitive damages is also denied. The Clerk of the Court is directed to make an entry of default with respect to defendants Walter G. Cook, Okapi, and Oxford. At the close of this case, the Court will direct the Clerk to enter a judgment against those defendants in the amount of $150,500 plus costs. Plaintiffs are directed to advise the Court and defendant Walter J. Cook within twenty days of the date of this Opinion and Order whether they intend to proceed against him.

SO ORDERED.