**STRANAHAN GEAR COMPANY, INC.**

v.

**NL INDUSTRIES, INC.**

v.

**BLUE STREAK INDUSTRIES, INC.**

**Appeal of NL INDUSTRIES, INC.**

No. 86–1028.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) July 29, 1986.

Decided Aug. 22, 1986.

54

See also, D.C., 102 F.R.D. 250.

Joseph J. Serritella, J. Kurt Straub, James J. Ferrelli, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellant NL Industries, Inc.

Tom P. Monteverde, Michael E. Scullin, Monteverde, Hemphill, Maschmeyer & Obert, Philadelphia, Pa., for appellee Blue Streak Industries, Inc.

Before ALDISERT, Chief Judge, HIGGINBOTHAM, Circuit Judge, and RE, Judge.[*]

## OPINION OF THE COURT

ALDISERT, Chief Judge.

We must decide whether the district court erred in opening a default judgment against a third party defendant on the ground that the third party plaintiff had not complied with the requirements for service of process of Rule 4(c)(2)(C)(ii), F.R. Civ.P., because the third party defendant refused to acknowledge receipt of service. We must also decide whether the district court erred in subsequently dismissing the third party complaint for lack of personal jurisdiction. We affirm.

---

[*] Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sit-

### I.

Blue Streak Industries, Inc., a Louisiana corporation, builds "jack-up barges" for use with offshore oil rigs in the Mississippi Delta region. Prior to the events giving rise to this action, Blue Streak had placed four orders with NL Industries, Inc., a New Jersey corporation, for special gearbox assemblies for use on its barges. These assemblies are manufactured in Langhorne, Pennsylvania by Stranahan Gear Company, Inc., a Pennsylvania corporation, and are distributed by NL Rucker Products, a division of NL Industries.

In February 1982, Blue Streak agreed to purchase another one hundred special gearbox assemblies from NL. Stranahan shipped the assemblies from Pennsylvania directly to Blue Streak in Chalmette, Louisiana, but Blue Streak refused to accept delivery or to pay for a portion of the shipment. Blue Streak then sent its Director of Materials, Vic Bares, to the Stranahan facility in Langhorne, Pennsylvania for meetings with Stranahan regarding the order. The first meeting occurred in June or July, 1982. Bares again visited the Stranahan facility in August or September, 1982.

Stranahan filed suit in the district court against NL demanding payment for the order. NL filed a third party complaint against Blue Streak alleging that Blue Streak had breached its agreements with NL and had "entered into separate negotiations [with Stranahan] purporting to extend and delay the delivery terms of NL's contract with Blue Streak and add an interest charge upon such undelivered goods." App. at 31a. NL attempted to serve Blue Streak pursuant to Rule 4(c)(2)(C)(ii), F.R. Civ.P., by mailing a summons and third party complaint directly to Blue Streak at its office in Louisiana. NL included two copies of a form 18–A notice and acknowledgment as required by the Rule. Blue Streak apparently received the mail service of process but did not return the acknowl-

ting by designation.

edgment form or otherwise respond to NL's third party complaint.

After the response time had expired, NL filed praecipes for the entry of default and default judgment against Blue Streak. As proof of service, NL submitted the affidavit of Donald Smith, an employee of NL, who stated that he had been told by Dennis Good, Blue Streak's President, that Blue Streak had received NL's service of process in the mail. The district court entered a default judgment on October 28, 1983 in the amount of $380,925.00 plus interest and costs.

Subsequently, Blue Streak moved to strike the default judgment. The district court granted Blue Streak's motion, holding that the default judgment was void because service was ineffective under Rule 4(c)(2)(C)(ii), F.R.Civ.P.

Pursuant to Rule 4, NL then properly served Blue Streak by personal service upon its agent for service in Louisiana. Blue Streak moved to dismiss NL's claims on the ground that the district court lacked *in personam* jurisdiction. The district court granted this motion and dismissed NL's claims against Blue Streak. NL appeals.

## II.

■ The standard of review of the district court's ruling on a motion to strike a default judgment for lack of proper service is plenary. *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14 (3d Cir.1985); *Boughner v. Secretary of HEW*, 572 F.2d 976 (3d Cir.1978). To the extent that the district court's subsequent order dismissing NL's complaint for lack of personal jurisdiction is based on findings of fact, these findings will not be disturbed unless clearly erroneous. To the extent that its conclusion is based on the application and interpretation of legal precepts, the standard of review is plenary. *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981).

## III.

NL contends that the district court erred in striking the default judgment against Blue Streak, arguing that its service of process was valid under Rule 4(c)(2)(C)(ii), F.R.Civ.P. That Rule, in pertinent part, provides for service:

by mailing a copy of the summons and of the complaint (by first class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to form 18–A and a return envelope, postage prepaid, addressed to the sender. If no acknowledgment of service under this subdivision of the rule is received by the sender within 20 days after the date of the mailing, service of such summons and complaint shall be made under subparagraph (A) or (B) of this paragraph in the manner described by subdivision (d)(1) or (d)(3).

NL concedes that Blue Streak did not return the form 18–A acknowledgment. It maintains that literal compliance with Rule 4 is not required, however, and that the admission of Blue Streak's President that Blue Streak had received the summons and complaint is sufficient acknowledgment.

■ We conclude that the district court did not err in striking the default judgment. We are satisfied that in drafting Rule 4 Congress meant precisely what its clear language states and that mail service is effective only if the provisions of Rule 4(c)(2)(C)(ii) are complied with literally. If an acknowledgment form is not returned, the formal requirements of mail service are not met and resort must be had to personal service. We adopt as our own the reasoning in *Armco, Inc. v. Penrod-Stauffer Building Systems, Inc.*, 733 F.2d 1087, 1089 (4th Cir.1984):

When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process. But the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored. This is particularly so when the means employed

engenders the kind of confusion which the defendant's officers reasonably experienced here, leaving them without clear notice of the necessity to respond.

We agree with the Court of Appeals for the Fourth Circuit that Rule 4 contains an express, "specific restriction" that must be followed: "when no acknowledgment was received within twenty days, [the] Rule itself required that service be made ... [by] personal service upon an agent of the corporate defendant." *Id.; see also Delta Steamship Lines, Inc. v. Albano*, 768 F.2d 728, 730 (5th Cir.1985); *Norlock v. City of Garland*, 768 F.2d 654, 657 (5th Cir.1985) (following *Armco*); *Crocker National Bank v. Fox & Co.*, 103 F.R.D. 388, 390 (S.D.N.Y.1984); *Billy v. Ashland Oil, Inc.*, 102 F.R.D. 230, 233 (W.D.Pa.1984).

Notwithstanding the language of the Rule, NL argues that Blue Streak in fact received the complaint by mail and should not be rewarded for refusing to return the acknowledgment. Blue Streak, however, counters that the Rule is clear—where acknowledgment in the proscribed form has not been sent, even if notice is actually received, the standard form of personal service is required. Blue Streak argues that the only penalty for awaiting personal service is that the party to be served must bear the expense.

Academic authority and the cases support Blue Streak's contention. In his practice commentaries on Rule 4, Professor David D. Siegel has noted: "The defendant can frustrate the whole process just by refusing to acknowledge receipt, thereby putting the plaintiff to the burden of effecting service by some other method." 28 U.S.C.A., Rule 4, Federal Rules of Civil Procedure (Supp.1986 at 36). Courts have rejected the contention that this result, however inequitable, provides a sufficient basis for deviating from the express requirements of the Rule. *See Armco, Inc. v. Penrod-Stouffer Building Systems, Inc.*, 733 F.2d 1087 (4th Cir.1984); *Coldwell Banker & Co. v. Eyde*, No. 85–C–8036 (N.D.Ill. May 28, 1986) [Available on WESTLAW, DCTU, database]; *In re Alex-ander Grant & Co.*, 110 F.R.D. 544 (S.D.Fla.1986); *Billy v. Ashland Oil Inc.*, 102 F.R.D. 230 (W.D.Pa.1984).

The Court of Appeals for the Second Circuit has reached a different conclusion on facts similar in some respects to those of the instant case. In *Morse v. Elmira Country Club*, 752 F.2d 35 (2d Cir.1984), the court ruled that:

strong factors of justice and equity push toward reading Rule 4(c) as providing for effective mail service where, as here, the recipient actually receives the mail service but refuses to acknowledge it properly.... Certainly, the desire to harass or inconvenience plaintiff, or to delay the tolling of limitations, should not be an excuse or a reason to interpret the rule against plaintiff. There is, in other words, no rationale for allowing a properly served defendant deliberately and willfully to postpone the ending of limitations by simply refusing to do what the rule calls upon him to do. In short, Congress would have no ground for providing that proper and known mail service would become ineffective simply because the defendant, without reason, acted like the dog in the manger.

*Id.* at 40. This interpretation is at odds with the express provisions of Rule 4. *See Coldwell Banker & Co. v. Eyde*, No. 85–C–8036 (N.D.Ill. May 28, 1986) (criticizing *Morse*). We do not believe that "factors of justice and equity" can override the unambiguous terms of a specific service rule. We believe that the court lacked the authority to counteract the specific direction of Congress and the Advisory Committee of the Rules of Civil Procedure. Even were we to concede the legitimacy of the *Morse* reasoning, certain factors present in that case are not present here. There, over two months after the defendant had received the materials and after the statute of limitations had run, defense counsel informed plaintiffs that they had to proceed with personal service. Under New York law the statute of limitations is tolled by service of process. Under these circum-

stances the Second Circuit held that since defendants had received the summons prior to the statute of limitations deadline, service for statute of limitations purposes was complete as of that date. 752 F.2d at 39. Here, unlike the situation in *Morse*, NL had ample time to effect service against Blue Streak by other means, and in fact did so.[1]

### III.

NL subsequently effected service on Blue Streak's registered agent in Louisiana. Blue Streak filed a motion to dismiss based on lack of jurisdiction, supported by affidavits demonstrating the insufficiency of its contacts with Pennsylvania. NL requested neither a hearing nor leave to take additional discovery. The district court granted Blue Streak's motion on the basis that NL had failed to show that Blue Streak had sufficient contacts with Pennsylvania to support the court's exercise of personal jurisdiction over Blue Streak. The district court also denied NL's timely motion for reconsideration. NL appeals from these orders.

■ After Blue Streak filed a motion, supported by affidavits, to dismiss the action for lack of personal jurisdiction, the burden shifted to NL to demonstrate that Blue Streak had contacts with Pennsylvania sufficient to give the district court jurisdiction. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984). Moreover, NL was required to sustain its burden of proof:

> through sworn affidavits or other competent evidence.... [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction.... Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.

*Id.* at 67 n. 9 (citations omitted).

On appeal, NL contends that it submitted documentary evidence sufficient to establish the district court's jurisdiction over Blue Streak. NL asserts that it demonstrated the requisite "minimum contacts" through evidence of Blue Streak's negotiations with Stranahan in Pennsylvania and Blue Streak's order of parts that it knew would be manufactured by Stranahan in Pennsylvania.

■ To support its jurisdictional contentions, NL submitted an affidavit of Ron Smith, regional sales manager for NL Rucker Industries, which stated:

> 6. In or about June or July, 1982, pursuant to delivery problems that developed under the fifth order, a meeting was held at the Stranahan facility in Langhorne, Pennsylvania. Vic Bares, Director of Materials for Blue Streak, attended that meeting. Bares was employed at Blue Streak's office in Chalmette, Louisiana.
>
> ....
>
> 8. In or about August or September, 1982, Vic Bares again visited the Stranahan facility in Langhorne, Pennsylvania to carry on negotiations concerning the fifth order.

App. at 249a. We are not satisfied that these statements establish the requisite connection between Blue Streak's presence in Pennsylvania and the acts giving rise to the cause of action. *See Time Share Vacation Club*, 735 F.2d at 63. The bare allegation in the NL complaint that during these meetings Blue Streak conspired with Stranahan to breach the contract with NL, *see* app. at 31a, is not sufficient to meet this evidentiary burden. *Time Share Vacation Club*, 735 F.2d at 67 n. 9.

■ Smith's affidavit also stated that "[w]hen the fifth order was made to NL by Blue Streak (in or about February, 1982), Blue Streak was aware that the assemblies requested by that order would, like the preceeding four orders, be manufactured by Stranahan in Langhorne, Pennsylvania."

---

1. A recent decision from the District Court of the Eastern District of Pennsylvania has adopted the Second Circuit's analysis in *Morse* and ruled service valid notwithstanding the failure to return a form 18–A acknowledgement.

*Systems Industries, Inc. v. Han*, No. 84–5457 (E.D.Pa. May 23, 1986) [Available on WESTLAW, DCTU database]. *Systems Industries, Inc.*, thus conflicts with the holding we announce today.

App. at 249a. Blue Streak, however, placed its order with NL, not with Stranahan. It was NL—not Blue Streak—that decided to fill this order through Stranahan, which manufactured the goods in Pennsylvania. The unilateral activity of NL cannot constitute a basis of jurisdiction over Blue Streak. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Accordingly, we are satisfied with the district court's statement of reasons:

> The Court has no difficulty in concluding that N.L. has failed to carry its burden of establishing that Blue Streak's contacts with Pennsylvania will support this Court's exercise of personal jurisdiction over Blue Streak.... The evidentiary material submitted by N.L. in support of personal jurisdiction shows only that Blue Streak contracted with N.L. in Louisiana, where N.L. was doing business. The mere fact that Blue Streak was on notice that N.L. intended to obtain the goods necessary to perform *its* end of the contract from a Pennsylvania manufacturer will not support the conclusion that *Blue Streak* purposely availed itself of the privilege of acting within Pennsylvania. The unilateral activity of N.L. in contracting with a Pennsylvania supplier will not satisfy the requirement of contact between the *defendant* (here the third party defendant) and Pennsylvania....
>
> Similarly, the two visits by Blue Streak's Director of Materials do not constitute sufficient minimum contacts with Pennsylvania to satisfy due process. N.L. has not refuted Blue Streak's sworn statement that its Director of Materials made these visits at N.L.'s invitation and that he conducted himself as requested or advised by N.L. These visits fail to establish vigorous negotiating or dictating of contract terms and departure from the passive buyer role required to make this court's exercise of jurisdiction fair and reasonable.... N.L.'s bare pleading allegations that at some point during the course of the contract's performance, Stranahan negotiated directly with Blue Streak to modify the terms of the N.L.-

Stranahan and N.L.-Blue Streak contracts are not competent jurisdictional evidence in the face of a motion to dismiss.

*Stranahan Gear Co. v. N.L. Industries, Inc.,* No. 83–3259, slip op. at 6–7 (E.D.Pa. February 14, 1985), *reprinted in* app. at 284a–85a (citations omitted).

### IV.

We will affirm the judgment of the district court.