**MONTCALM PUBLISHING CORP., Plaintiff,**

v.

**John S. RYAN, Angelo Borrelli, Progressive Magazines, Inc., Direct Marketing, Inc., Periodical Marketing, Inc., United Computer Systems Corp., Publishers Shipping Associates, Inc., Group Publishers Services Corp., John Doe Corp. 1–5, John Doe 1–5, Jane Doe 1–5, Defendants.**

**No. 90 Civ. 7783 (CBM).**

United States District Court, S.D. New York.

April 21, 1992.

---

Keith S. Orenstein, Michael J. Coyle, New York City, for plaintiff.

## MEMORANDUM OPINION

MOTLEY, District Judge.

### Background

Plaintiff Montcalm Publishing Corporation ("Montcalm"), a magazine publisher, brought suit against defendant John S. Ryan ("Ryan") and several corporate defendants under the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. § 1961, *et seq.*, to recover money damages on account of defendants' allegedly fraudulent activities. Montcalm also raised a claim of common law fraud.

According to Montcalm's complaint, individual retailers of magazines display Montcalm's and other publishers' magazines for resale. For this service, publishers pay a fee to the retailers, known in the industry as the "retail display allowance" ("RDA"). On June 1, 1986, Montcalm and defendant Progressive Magazines, Inc. ("Progressive") entered into a contract whereby Progressive agreed to administer Montcalm's RDA payments for a period of two years. Under the contract, Montcalm would make lump sum payments to Progressive, which would in turn send RDA payments to individual retailers.

In its complaint, Montcalm alleged that Ryan wilfully devised a massive scheme to defraud Montcalm, other publishers and vendors entitled to RDA payments. This scheme was allegedly perpetrated through the use of the defendant corporations which were owned and controlled by Ryan. Montcalm alleged that Progressive, in furtherance of the scheme and through false and fraudulent pretenses, induced Montcalm and other publishers to enter into contracts which entrusted Progressive with millions of dollars which were to be disbursed to hundreds of individual magazines retailers. Montcalm further alleged that the defendants wilfully violated the contracts, stealing and converting at least $850,000.00 for their own use.

Montcalm alleged that defendants committed these acts in violation of RICO through a pattern of racketeering activity which included multiple acts of mail fraud, wire fraud, and obstruction of justice. Montcalm asserted that it only became aware of the scheme after taking discovery in the breach of contract action it filed regarding its RDA payments contract with Progressive. That case, *Montcalm Publishing Corp. v. Progressive Magazines*, No. 89 Civ. 5144 (DNE), was stayed when Progressive filed for bankruptcy.

### Procedural history

On June 3, 1991, the court stayed this action as to defendants Ryan and Progressive, pending the outcome of their bankruptcy proceedings in New Jersey.

On June 28, 1991, the court granted Montcalm's motion for judgment by default against defendants Direct Marketing, Inc., Periodical Marketing, Inc., United Computer Systems Corp., Publishers Shipping Associates, Inc. and Group Publishers Services Corp. ("the Defaulting Defendants"), holding each Defaulting Defendant jointly and severally liable. The court found that after each of these defendants had been duly served with process, each had failed to answer both the complaint and the motion for judgment by default. To ascertain the extent of damages as to the Defaulting Defendants, an inquest was held on November 22, 1991.

### Montcalm's proof at the inquest

At the inquest to determine the level of damages, Montcalm called one witness:

Chris Grossman, the controller of Montcalm. Through Ms. Grossman, Montcalm presented proof that Montcalm had paid Progressive $1,333,048.16 which Progressive placed in a Concentration Account. Under the contract between Progressive and Montcalm, that money was earmarked to cover Montcalm's RDA costs, which Progressive was to pay to individual retailers. Montcalm showed at the inquest that Progressive only paid $1,138,935.08 from the Concentration Account into Montcalm's trust account. This represented the amount of money which was actually paid by Progressive to cover Montcalm's RDA costs. Therefore, the evidence illustrated that Progressive kept $194,113.08 of Montcalm's money which should have been paid to retailers. *See* tr. at 11–14; exhibit 1.

Montcalm also proved that it had paid Ryan and/or Progressive to perform certain services to retailers that were never performed. When Montcalm discovered this deficiency after its relationship with Ryan and Progressive was terminated, Montcalm had to pay retailers directly for the unperformed services. Therefore, Montcalm was damaged by the amount to which it had to make duplicate payments for those services. Montcalm proved that the cost of the duplicate payments was $191,750.95. *See* tr. at 14–18; exhibits 2, 3, and 7.[1]

Montcalm also offered evidence regarding its expenses in prosecuting this case. Montcalm illustrated that the controller and her staff prepared the schedules in the case at a cost of $11,154.00. *See* tr. at 21–22; exhibit 4. Montcalm paid an investigative accountant for his work at the outset of the case ($8,800.00), an economic research firm for checking into the background of the defendants ($3,457.00), and Citizens First National Bank for providing copies of the cancelled checks from the concentration account ($2,986.00). *See* tr. at 21–22; exhibit 5. Additionally, Montcalm had legal fees of $165,702.00. *See* tr. at 23–27; exhibit 6.

Montcalm illustrated that the sum total of its compensatory damages, not including legal fees, was $412,261.03. *See* tr. at 23–24; exhibit 7. Montcalm asserted that treble compensatory damages ($1,236,783.09) were appropriate given that the case was brought under RICO. *See* tr. at 27. By adding in legal fees, Montcalm's total damages came to $1,402,485.09. *See* tr. at 24; exhibit 7.

*Analysis*

■ A default constitutes admission as to liability; therefore, the effect of a defendants' default is that it is deemed to have admitted all of the well-pleaded allegations raised in the complaint pertaining to liability. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir.1989); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981); *Deshmukh v. Cook*, 630 F.Supp. 956, 959 (S.D.N.Y.1986); 6 *Moore's Federal Practice* ¶ 55.03[2] at 55–16 (2d ed. 1988).

■ However, where the quantum of damages is not liquidated and is not a readily ascertainable sum, the plaintiff must prove damages before the entry of a final default judgment. *United States v. Di Mucci*, 879 F.2d at 1497; *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d at 65; *Deshmukh v. Cook*, 630 F.Supp. at 959. *See* Fed.R.Civ.Pro. 55(b).

In this case, damages were not liquidated and could not be readily calculated. Thus, the burden was on Montcalm at the inquest to establish the level of damages as to the Defaulting Defendants which Montcalm failed to do. The evidence presented concentrated on Ryan and Progressive, the two defendants presently in bankruptcy. Montcalm offered no evidence as to the extent of damages caused by the Defaulting Defendants, leaving the court no basis to enter an award of damages and a final judgment as to the Defaulting Defendants.

■ Furthermore, the court has determined that it is premature at this time to calculate the level of damages and enter a

---

1. Because the court has decided, *infra,* that damages will be assessed at a later date, the court does not now address the issue of whether Montcalm double-counts when it seeks as compensatory damages both the money Progressive did not pay retailers on Montcalm's behalf ($194,113.08) and the payments Montcalm made directly to retailers to cover for Progressive's delinquency ($191,750.95).

final judgment against the Defaulting Defendants. The problem stems from the fact that some, but not all, of the defendants have defaulted. *Frow v. De La Vega,* 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872) and its progeny deal with the extent to which courts may proceed against a defaulting defendant when joint and/or several liability is sought against that defendant and other non-defaulting defendants.

■ In a case such as this, where plaintiff seeks joint and several liability against several defendants, the court may enter a default judgment against any defendants who default by failing to appear. Fed. R.Civ.Pro. 54(b), 55(b). *See 6 Moore's Federal Practice* ¶ 55.06 at 55–39 and –40 (2d ed. 1988). This rule formed the basis for the court's entry of default judgments against the Defaulting Defendants on June 28, 1991.

However, in such a case where some but not all defendants have defaulted,

> the courts have consistently held that it is appropriate to enter judgment solely as to liability and not as to the amount of damages to be assessed against the defaulting party, since a separate determination of damages would pose the prospect of inconsistent judgments.

*Friedman v. Lawrence,* 90 Civ. 5584, 1991 WL 206308 (S.D.N.Y. Oct. 2, 1991) (Dolinger, M.J.) (citations omitted). Montcalm claims joint and several liability in this case, alleging that all of the defendants acted together in a scheme to defraud. In such a case, the amount of damages which plaintiff may recover from defaulting and non-defaulting defendants should not differ. *See Hunt v. Inter–Globe Energy,* 770 F.2d 145, 147–48 (10th Cir.1985); *Dundee Cement Co. v. Howard Pipe & Concrete Prod.,* 722 F.2d 1319, 1324 (7th Cir.1983). However, if the court assessed damages against the Defaulting Defendants at this time, it would risk the possibility of disparate damage judgments, since the court may not presently address the issue of damages as to Ryan and Progressive, the non-defaulting defendants.

Instead, the proper procedure is to consolidate the inquest to determine the level of damages as to the Defaulting Defendants with the damages aspect of the trial against the non-defaulting defendants, Ryan and Progressive. *See 6 Moore's Federal Practice* ¶ 55.06 at 55–42 n. 17 (2d ed. 1988). The Defaulting Defendants may not participate in the merits aspect of the trial, as their default judgments stand as admissions of liability.

Finally, because this action has been stayed as to defendants Ryan and Progressive, pending the outcome of their bankruptcy proceedings in New Jersey, the action shall be placed on the suspense calendar.

### ORDER

Pursuant to the Memorandum Opinion filed concurrently with this Order, it is hereby ordered:

(i) that the default judgments against defendants Direct Marketing, Inc., Periodical Marketing, Inc., United Computer Systems Corp., Publishers Shipping Associates, Inc. and Group Publishers Services Corp. ("the Defaulting Defendants") remain in effect and preclude them from participating in the merits aspect of the trial in this action;

(ii) that the inquest to determine the level of damages as to the Defaulting Defendants shall be consolidated with the damages aspect of the trial against the non-defaulting defendants, Ryan and Progressive;

(iii) that the entire action shall be placed on the suspense calendar, pending the outcome of the bankruptcy proceedings in New Jersey concerning defendants Ryan and Progressive; and

(iv) that there will be a status conference on October 30, 1992 at 10:00 a.m. in courtroom 906.

SO ORDERED.