**SOUTHERN PRIDE, INC., Plaintiff,**

v.

**TURBO TEK ENTERPRISES, INC., Defendant.**

**Civ. A. No. C–87–260–G.**

United States District Court, M.D. North Carolina, Greensboro Division.

Nov. 18, 1987.

---

**568**

Larry L. Coates and David E. Bennett, of Mills and Coats, Raleigh, N.C., for plaintiff.

Simon L. Moskowitz, of Fleit, Jacobson, Cohn & Price, Washington, D.C., for defendants.

## MEMORANDUM OPINION

GORDON, Senior District Judge:

Defendant Turbo Tek Enterprises ("Turbo Tek") moves to dismiss plaintiff Southern Pride's trademark infringement and unfair trade action for insufficient service of process and improper venue. The court denies defendant's motion.

### FACTS

Southern Pride is a North Carolina corporation having its principal place of business in Burlington, North Carolina. Southern Pride manufactures and sells car wash chemicals and equipment under the "Turbo Wash" trademark. Turbo Tek is a California corporation having its principal place of business in Los Angeles, California. Turbo Tek manufactures and sells a car wash attachment for garden hoses that increases the hoses' water pressure and spray power. Turbo Tek also sells car wash chemicals, such as soaps and waxes, which accompany the pressure spray attachment. Turbo Tek distributes its products nationwide, with North Carolina accounting for about 3.6% of Turbo Tek's sales.

On April 21, 1987, Southern Pride filed this action against Turbo Tek claiming trademark infringement under the Lanham Act, 15 U.S.C. § 1501, *et seq.*, and unfair trade practices under N.C. Gen. Stat. § 75–1.1. Southern Pride, in specific, complains that Turbo Tek has used the marks "Turbo-Tek" and "Turbo-Wash" on its products for the purpose of misleading the public as to the manufacturer of the prod-

ucts, thereby exploiting the reputation and goodwill of Southern Pride.

Southern Pride attempted to serve Turbo Tek with process on three separate occasions. Southern Pride initially mailed the summons and complaint, together with a "notice and acknowledgment", to Turbo Tek. Although Turbo Tek received the summons and complaint, it did not return the "notice and acknowledgment" form. Next, Southern Pride had a copy of the original summons and complaint personally served upon Turbo Tek in Los Angeles, California. Finally, Southern Pride had a separate summons issued and served on Turbo Tek by certified mail, return receipt requested. Turbo Tek signed the return receipt and mailed it back to Southern Pride.

On July 13, 1987, Turbo Tek moved to dismiss this action for insufficient service of process and improper venue.

### DISCUSSION

Turbo Tek's motion to dismiss raises two issues: (1) Whether a plaintiff, after unsuccessfully attempting to serve the defendant by mail, can successfully effect personal, extraterritorial service on the defendant under Fed.R.Civ.P. 4(c)(2)(C)(ii); (2) What is the proper standard for determining whether a defendant, under 28 U.S.C. § 1391(c), is "doing business" in a judicial district for venue purposes.

### 1) Plaintiff Effected Service on Defendant

■ "Absent effective service of process, a court is without jurisdiction to render a personal judgment against a defendant." *Federal Deposit Insurance Corp. v. Schaffer*, 731 F.2d 1134, 1135–36 (4th Cir. 1984). *See Armco, Inc. v. Penrod–Stauffer Bldg. Systems*, 733 F.2d 1087, 1089 (4th Cir.1984). The plaintiff bears the burden of demonstrating the sufficiency of the service of process. *Norlock v. City of Garland*, 768 F.2d 654, 656 (5th Cir.1985); *Lee v. Carlson*, 645 F.Supp. 1430, 1433 (S.D.N. Y.1986). *But cf. Nikwei v. Ross School of Aviation, Inc.*, 822 F.2d 939, 941 (10th Cir.

1987) (proper mailing of summons and complaint raises a rebuttable presumption of delivery to the addressee, and defendant, in such situations, has the burden of presenting "strong and convincing" evidence of the insufficiency of the service). To be effective, service must satisfy both constitutional due process and the statute under which service is attempted. *Ackermann v. Levine*, 788 F.2d 830, 838 (2d Cir.1986).

"It is well settled that ... due process does not require exact certainty." *Nikwei v. Ross School of Aviation, Inc.*, 822 F.2d 939, 942 (10th Cir.1987). Rather, to satisfy the due process clause, notice must be "reasonably calculated" to apprise the defendant of a pending action. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *Nikwei*, 822 F.2d at 942. In the instant case, plaintiff's attempts to serve defendant unquestionably satisfied due process. The notice was reasonable calculated to apprise defendant of the action and, in fact, put defendant on actual notice of the action. The only question is whether plaintiff's attempts to serve defendant satisfied the requirements of the statute under which service was attempted.

"In the federal courts, the adequacy of efforts to effect service in civil actions is controlled by Rule 4." *Combs v. Nick Garin Trucking*, 825 F.2d 437, 442 (D.C.Cir. 1987) (citing Fed.R.Civ.P. Rule 4). *See Federal Deposit Insurance Company v. Schaffer*, 731 F.2d 1134, 1136 (4th Cir.1984) (federal court exercising diversity jurisdiction applies federal law to ascertain the proper method of service). If the process

employed under Rule 4 "gives the defendant actual notice of the pendency of the actions, ... [Rule 4 is entitled] to a liberal construction [and].... every technical violation of the rule or failure of strict compliance may not invalidate the service of process. But the ... plain requirements for the means of effecting service may not be ignored." [1] *Armco, Inc. v. Penrod–Stauffer Bldg. Systems*, 733 F.2d 1087, 1089 (4th Cir.1984). *See* 4A Wright and Miller, *Federal Practice and Procedure* § 1083, pp. 10–11 (1987). *Cf. Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir.1986) ("Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint"); *Kitchens v. Bryan County Nat. Bank*, 825 F.2d 248, 256 (10th Cir.1987) (same); *Nikwei*, 822 F.2d at 942 (same). Rule 4 provides a federal court plaintiff with the option of effecting service under either the forum state or the federal methods of service. *Delta Steamships Lines, Inc. v. Albano*, 768 F.2d 728, 729 (5th Cir.1985).

Rule 4 delineates two federal methods of service: service by mail, in accordance with Rule 4(c)(2)(C)(ii), or personal service by anyone not a party to the suit who is at least eighteen years of age. Under the federal mailing method, plaintiff mails defendant a copy of the summons and complaint, together with two copies of a notice and acknowledgment form. Even if defendant receives the mailed complaint and summons, service is not effectuated unless defendant returns the acknowledgment form and plaintiff receives it within

---

**1.** Rule 4 was amended in 1983 to permit private service of process through the mail. The amendment was intended to substantially reduce the burden on the United States Marshalls of serving summons and complaints in civil actions. *Lovelace v. Acme Markets, Inc.*, 820 F.2d 81, 83 (3d Cir.1987); *Braxton v. United States*, 817 F.2d 238, 240 (3d Cir.1987). "Over the years, the fact that service of process was conducted by federal marshals had given the courts confidence that the procedures were being performed competently and properly. Consequently, an unarticulated presumption of regularity attached to service by marshals, and judicial interpretation of the predecessor Rule 4 was comparatively casual. However, in circumstances where the marshals were removed from

the scene, the courts became increasingly concerned about the possible abuse and insisted on literal adherence to amended Rule 4." *Braxton*, 817 F.2d at 240. *See Stranahan Gear Co. v. NL Indus., Inc.*, 800 F.2d 53, 56 (3d Cir.1986) (Rule 4(c)(2)(C)(ii), permitting service through the mail, is to be "complied with literally"); *Delta Steamships Lines, Inc. v. Albano*, 768 F.2d 728, 730 (5th Cir.1985) ("only careful compliance with 4(c)(2)(C)(ii) will suffice"). As one commentator put it, "[t]he lesson to the practitioner is not to expect the solicitous attitude the courts may have manifested about service defects when the marshal ran the store." Siegel, *Practice Commentary on Amendment of Federal Rule 4 (Eff. Feb. 26, 1983) with Special Statute of Limitations Precautions*, 96 F.R.D. 88, 109 (1983).

the prescribed 20 days.[2] *Combs v. Nick Garin Trucking,* 825 F.2d 437, 443 (D.C. Cir.1987); *Braxton v. United States,* 817 F.2d 238, 240 n. 1 (3d Cir.1987); *Stranahan Gear Co. v. NL Indus., Inc.,* 800 F.2d 53, 56 (3d Cir.1986); *Armco,* 733 F.2d 1087, 1089 (4th Cir.1984). *But see Morse v. Elmira Country Club,* 752 F.2d 35, 36 (2d Cir.1984) (Rule 4(c)(2)(C)(ii) should not be "read to void a received-but-unacknowledged mail service"); *Benage v. Gibralter Building & Loan,* 115 F.R.D. 20, 21 (D.Conn.1978) ("justice and equity favor a finding of effective service where the defendant actually receives the mail service, but refuses to acknowledge it"). In addition, if service under the federal mailing method proves ineffective because defendant fails to return the acknowledgement form, that attempt at service cannot then be said to have satisfied the state mailing method.[3] *Combs,* 825 F.2d at 447–48; *Stranahan,* 800 F.2d at 56–57; *Armco,* 733 F.2d at 1089. Finally, as the language of Rule 4 commands, a plaintiff who unsuccessfully attempts to effect service under the federal mailing method must then resort to federal personal service:

> "If no acknowledgment ... is received by the sender within 20 days after the date of mailing, service *shall* be made under subparagraph (A) or (B) of this paragraph [i.e., federal personal service]."

Fed.R.Civ.P. 4(c)(2)(C)(ii) (emphasis added). *See Stranahan,* 800 F.2d at 56 ("if an acknowledgement form is not returned ... resort must be had to personal service"); *Armco,* 733 F.2d at 1089 ("when no acknowledgment was received ... rule itself required personal service upon an agent of the corporate defendant"). *See also Combs,* 825 F.2d at 443–444 n. 55 (citing numerous district court opinions embracing the position). *But see Humana v. Jacobson,* 804 F.2d 1390, 1393 (5th Cir.1986)

(plaintiff could effect service under state law methods following unsuccessful attempt at federal mail service).

■ In addition to delineating the methods of service, Rule 4 delineates the territorial limits on service of process. Rule 4(f) specifically allows service within the forum state and, in some instances, within the 100 mile "bulge" surrounding the forum state. Rule 4(f) also authorizes extraterritorial service if so provided by the federal rules of civil procedure or a federal statute. "Rule 4(e) ... authorizes a federal district court seeking to reach a party not found within the territory of the state within which the court is held and not amenable to suit under either federal statutes authorizing extra-territorial service or the bulge provision of Rule 4(f) to borrow the long-arm authority of the state within which the federal court sits." *Columbia Briargate Company v. First National Bank In Dallas,* 713 F.2d 1052, 1053 n. 1 (4th Cir.1983). *See* 4A Wright and Miller, *Federal Practice and Procedure,* §§ 1113, 1114, pp. 235, 239 (1987); 2 Moore, *Moore's Federal Practice* § 4.42[2.–2], pp. 394–95 (1987). Since North Carolina's long-arm statute (N.C.Gen.Stat. § 1A–1, Rule 4(j)(6)) permits out-of-state service of process, a plaintiff in a federal court case held in North Carolina is entitled to reach beyond the North Carolina borders to serve a defendant.

■ In the present case, plaintiff initially sought to serve defendant pursuant to the federal mailing method, specified in Rule 4(c)(2)(C)(ii). Defendant failed to return the acknowledgement form, however, thereby precluding the completion of the purported service. Plaintiff next attempted to effect personal service on defendant in California. Defendant contests the validity of the personal service. Defendant contends that once service was initiated

---

**2.** "This ... interpretation is consistent with the plain language of the rule, which provides that alternative methods of service *shall* be used where there is no acknowledgment of mail service." *Scarton v. Charles,* 115 F.R.D. 567, 569 (E.D.Mich.1987). Furthermore, this interpretation obviates lengthy factual disputes as to whether service was actually received. *Id.*

**3.** Defendants cannot ignore, with impunity, service received in the mail. Rule 4(c)(2)(C)(ii) states that "[u]nless good cause is shown for not doing so the court shall order the payment of the costs of personal service by the person served if such person does not complete and return within 20 days after mailing, the notice and acknowledgment of receipt of summons."

and then unacknowledged under the federal mailing method, plaintiff could no longer rely on the state long-arm statute to effect extraterritorial personal service. Defendant maintains that, under these facts, plaintiff could effect personal service only in the forum state, namely North Carolina. Defendant asserts that *Armco, Inc. v. Penrod–Stauffer Bldg. Systems*, 733 F.2d 1087 (4th Cir.1984), compels such a result. The court emphatically disagrees.

On the theoretical level, *Armco* holds that, where the defendant is notified of the pending action, Rule 4 should be broadly construed in favor of a finding that plaintiff complied with the rule, provided that any such construction is not at war with the rule's plain language. On the specific level, *Armco* holds that a plaintiff, following an unsuccessful attempt to effect service through the federal mailing method, cannot rely on the state methods of service either to revive the purported federal mail service or to initiate a second attempt at service. Rather, plaintiff must resort to the federal method of personal service. 733 F.2d at 1089. Critically, *Armco* speaks to only the *methods* of service available to a plaintiff, not the *territorial limits* on service. *See United States v. Union Indem. Ins. Co. of New York*, 109 F.R.D. 153, 155 (E.D.N.Y.1986). Thus, while plaintiff in the instant case, after an unsuccessful attempt at federal mail service, was limited to the federal method of personal service, plaintiff was nonetheless permitted, under Rule 4(e), to rely on North Carolina's long-arm statute as authority for the extraterritorial service on defendant. *Scarton v. Charles*, 115 F.R.D. 567, 571 (E.D.Mich. 1987); *Union Indem.*, 109 F.R.D. at 155. *See McDougald v. Jenson*, 786 F.2d 1465, 1487 (11th Cir.1986).[4] To hold otherwise would be, in one instance, to sustain extraterritorial service where a plaintiff, right from the start, effects federal personal service outside the forum state, and then, in

another instance, to reject extraterritorial service where a plaintiff, after unsuccessfully attempting federal mail servive, attempts to effect federal personal service outside the forum. The court rejects such a strained, inequitable construction of Rule 4 and, accordingly, concludes that the plaintiff herein properly effected personal service on defendant in California.

### *2) Venue Is Proper Under 28 U.S.C. § 1391(c) Because Turbo Tek Is "Doing Business" In North Carolina*

In federal cases in which subject matter jurisdiction is founded only on diversity of citizenship, venue is proper in any judicial district where all the plaintiffs reside, all the defendants reside, or the claim arose. *See* 28 U.S.C. § 1391(a). In federal cases in which subject matter jurisdiction is supportable by a claim under federal law, venue is proper only where all the defendants reside or the claim arose. *See* 28 U.S.C. § 1391(b). Plaintiff herein alleges violations of federal law. Accordingly, this court has venue if defendant resides, or if the the claim arose, in this district.

■ For venue purposes, a corporation is a resident of any judicial district in which it is incorporated or licensed to do business or is doing business. *See* 28 U.S.C. § 1391(c). "Although concrete, objective evidence can be examined to determine a company's state of incorporation or where it has obtained a state license to conduct its business, the third criterion, doing business, is subjective and problematic. Courts and commentators have not been able to agree on a practical, workable definition of 'doing business' as used in section 1391(c)." Note, *Defining 'Doing Business' to Determine Corporate Venue*, 65 Tex.L.Rev. 153 (1986) (hereafter "Note"). From the courts' efforts to define doing business, three tests have evolved.

---

**4.** *Scarton* states that "Rule 4 should not be interpreted to make service upon nonresidents impossible once the plaintiff elects to use a method of service expressly permitted by the rule." 115 F.R.D. at 571. *Union Indem.* describes the interpretation urged by defendant as "an absurd statutory construction." 109 F.R.D. at 155. Finally, *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, cited by defendant, is inapposite, for it merely holds that once federal mailing service is ineffective, plaintiff must then comply with the federal, not the state, *method* of personal service. 110 F.R.D. 4, 7 (S.D.W.Va.1985).

One test, commonly known as the "jurisdiction test", equates doing business with "minimum contacts"—the standard which courts use to determine whether the exercise of *in personam* jurisdiction satisfies the Due Process Clause of the Fourteenth Amendment. A number of courts and commentators embrace the jurisdiction test. *See Maybelline Co. v. Noxell Corp.*, 813 F.2d 901, 903–04 & n. 5 (8th Cir.1987) (cites authority for, but does not adopt, the jurisdiction test); Note, 65 Tex.L.Rev. n. 56–57 and accompanying text (same). Proponents of this test point to the uniformity and simplicity created by having the same test for both jurisdiction and venue. One commentator, although recognizing that "[t]he considerations relevant to personal jurisdiction and to venue are not entirely congruent," states that "there is a great advantage in having one standard of 'doing business' for both doctrines rather than complicating an already-complicated matter by having two different standards." 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*, § 3811, at 123 (2d ed. 1986).

Critics of the jurisdiction test, however, contend that there are significant differences in the purposes underlying personal jurisdiction and venue, and that these differences indicate that doing business for venue purposes contemplates a higher level of contacts between the defendant and the forum state than the level of contacts contemplated for personal jurisdiction:

> The personal jurisdiction standard is concerned with where a case *may* be heard consistent with due process; venue is a statutory requirement that reflects "Congress' decision concerning where a case *should* be heard." *Wool Masters*, 743 F.2d at 951 (emphasis in original). Although both doctrines embody fairness considerations, the personal jurisdiction standard also includes an element of "interstate federalism" that may override fairness. [cites omitted]. Venue, on the other hand, is more clearly directed at fairness and convenience to the defend-

ant.... [Thus], "[t]he fact that a particular court's assertion of personal jurisdiction is not so 'unfair' as to deny a defendant due process does not necessarily mean that to hold trial there is fair in the sense contemplated by Congress in the venue statute." *Wool Masters*, 743 F.2d at 952. Therefore, we conclude that "doing business" for venue purposes should be subject to a higher standard than that for personal jurisdiction.

*Maybelline Co. v. Noxell Corp.*, 813 F.2d 901, 904–05 (8th Cir.1987). *See generally* Note, 65 Tex.L.Rev. at n. 6–15, 86, 87, and accompanying text.

A second test, called the "licensing test", requires more than "minimum contacts" to establish venue. Under the licensing test, a corporation is deemed to be doing business if its activities within the forum state are sufficiently localized and intrastate that the state, under the Commerce Clause, could constitutionally require the corporation to qualify to do business there.[5] *See* Note, 65 Tex.L.Rev. at n. 94–114 and accompanying text. At least three federal court of appeals have adopted the licensing test. *See Maybelline Co.*, 813 F.2d 901, 904–05 (8th Cir.1987); *Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710, 721 (D.C.Cir. 1986); *Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 743 F.2d 947 (1st Cir. 1984). Proponents of the licensing test argue that the level of activity required for personal jurisdiction is different from that required for venue because "personal jurisdiction is based on the minimum amount of 'fairness' required in order to comport with due process ... [but] ... [v]enue limitations generally are added by Congress to insure a defendant a fair location for trial and to protect him from inconvenient litigation." *Wool Masters*, 743 F.2d at 949. Proponents point to the language in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183–84, 99 S.Ct. 2710, 2716–17, 61 L.Ed.2d 464 (1979), as authority that Congress did not design the venue statute to multiply the number of forums available to

---

**5.** Plaintiff concedes that, under the licensing test, defendant would not be viewed at doing business in North Carolina. Defendant's motion to dismiss, on venue grounds, therefore turns on which doing business test the court adopts.

the plaintiff, but to protect the defendant from an inconvenient forum. *Leroy* adopts a pro-defendant stance in interpreting the venue laws, stating that "[i]n most instances, the purpose of statutorily specified venue is to protect the *defendant* against the risk that the plaintiff will select an unfair or inconvenient place of trial." 443 U.S. at 183–84, 99 S.Ct. at 2716–17 (addressing "claim arose" venue, not "doing business" venue, in context of 28 U.S.C. § 1391). Thus, it is argued that Congress did not intend for "doing business" venue to extend to the full limits of the due process clause, *Maybelline Co.*, 813 F.2d at 905. Instead, in devising "doing business" venue, Congress sought to "rectify the anomalies" arising from *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939), a Supreme Court opinion which upheld venue against corporations that, in compliance with state law, designated an agent to receive service of process:

> the *"Neirbo* rule" led to the anomaly that venue was proper as against corporations that conformed with state law and appointed agents for service of process, but improper as against corporations that had not designated an agent even though state law required them to do so. In 1948 Congress wrote the *Neirbo* rule into the venue statute but made it clear that the place of "doing business" was to be considered the residence of the corporation for venue purposes, regardless of whether the corporation had complied with state law and appointed an agent for service of process. We believe that this alteration of the venue statute was meant to rectify the anomalies of the *Neirbo* rule by removing the advantage a corporation could gain by failing to comply with state registration laws. [cites omitted] Moreover, we are unwilling to conclude that by seeking to remove the advantage a corporation could gain by failing to comply with state registration law Congress intended to extend venue to the full limits of the due process clause. Consequently, we hold that "doing business" ... means "engaging in transactions ... to such an extent

and of such a nature that the state ... could require foreign corporations to qualify to 'do business' there." *Wool Masters*, 743 F.2d at 954.

*Maybelline Co.*, 813 F.2d at 905.

Critics of the licensing test, however, take issue with the assertion that Congress intended "doing business" to mean a state could require the corporation to qualify to "do business" there. As one commentator stated, "Congress adopted the venue provisions of the 1948 Judicial Code unchanged from what had been recommended by the Revisor and his advisors. Neither in the ... Revisor's Note to § 1391(c) nor anywhere else in the legislative history is there any reference to qualifying to do business or to licensing or to the *Neirbo* case." 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*, § 3811, p. 122 (1986). *See* Note, 65 Tex.L.Rev. at n. 122–27 and accompanying text; Note, *Federal Venue Over Corporations Under Section 1391(c): Plaintiff Corporations, the Judicial District Limitation, and "Doing Business"*, 12 Ga.L.Rev. 296, 320–321 (1978). Another critic maintains that reliance on *Leroy*, as authority for a pro-defendant stance in interpreting the venue statute, is "analytically unsound and not supported by congressional intent or legislative history." Note, 65 Tex.L.Rev. at text accompanying n. 117–121. *Leroy*'s pro-defendant stance, it is contended, should be limited to construction of "claim arose" venue under § 1391(b). *Id.* It is further contended that the commerce clause analysis, the backbone of the licensing test, is in fact no different from the jurisdiction test:

> Courts previously have recognized that an equation of venue and jurisdiction requirements does not place a burden on interstate commerce; that is, if service of process is proper, the commerce clause is not offended. In effect, the contacts required for venue would be measured by an analysis much akin to that for long-arm service of process: examination of a state statute in terms of constitutional "fairness" criteria.... Thus, as in the

jurisdiction test, the qualitative nature of the contacts is key. Note, 65 Tex.L.Rev. at text accompanying notes n. 128–31. Finally, a respected authority asserts that the adoption of the licensing test would leave a venue loophole:

> One of the consequences of the licensing standard is that a corporation will never be found to be "doing business" for purposes of § 1391(c) [if] it is doing a wholly interstate business within the state. This will prevent § 1391(c) from being used in many cases involving extensive activity by a corporation within the district.

15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*, § 3811, p. 121 (1986).

Given the widespread criticism of both the jurisdiction and licensing tests, a few commentators have proposed a compromise test, herein referred to as the modified jurisdiction test. The modified jurisdiction test relies on the distinction between general and specific jurisdiction, a distinction expressly recognized by the Supreme Court in *Helicopteros Nacionales De Colombia S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). General jurisdiction focuses on the quantity of defendant's contacts with the forum state, allowing personal jurisdiction only if the defendant's contacts are continuous and systematic. Specific jurisdiction focuses on the quality of the defendant's contacts with the forum state; isolated and casual contacts with the forum state are sufficient to establish specific jurisdiction, provided that the controversy is related to or arises out of such contacts. Under the modified jurisdiction test, "doing business" venue is proper only where the court has general jurisdiction over the defendant.[6] Note, 65 Tex.L.Rev. at text acompanying n. 141–42. *See* 15 C. Wright, A. Miller & E. Cooper, § 3811, at 119 n. 68 (attributing the innovation of the modified jurisdiction test to Judge Ruth Bader Ginsburg of the District of Columbia Circuit, yet questioning the test's necessity).

■ Upon evaluating the three tests, the court determines that the modified jurisdiction test successfully compensates for the inadequacies and excesses of the jurisdiction and licensing tests. First of all, the court agrees that the jurisdiction test, in its pure form, does not adequately account for the convenience considerations underlying the venue laws. The court cannot ignore *Leroy's* broad assertion that the "purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." 443 U.S. at 183–84, 99 S.Ct. at 2716–17. The jurisdiction test goes too far in providing the plaintiff with alternative forums and not far enough in assuring that the plaintiff selects a reasonable and fair forum. After all, under the jurisdiction test, a corporation conducting an isolated transaction in a foreign state may be subject to specific jurisdiction and thus venue in the foreign state, even though such state clearly may be an inconvenient forum.

■ The court also believes that the licensing test is flawed. The venue laws should be construed so as to avoid creating loopholes. *Cf. Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706, 710 n. 8, 92 S.Ct. 1936, 1939 n. 8, 32 L.Ed.2d 428 (1972) ("in construing venue statutes it is reasonable to prefer the construction that avoids leaving a ... gap"). Nonetheless, under the licensing test, a defendant is not subject to "doing business" venue in a state wherein it conducts extensive business, so long as the business conduct is "wholly interstate". C. Wright, A. Miller & E. Cooper, § 3811, at p. 121. Such a test not only creates a loophole, but also violates the plain meaning of the words "doing business". *See id.* at p. 122–23 ("If Congress thought anything about this provision, it is reasonable to

---

**6.** Under the modified test, a finding of specific jurisdiction will not sustain "doing business" venue; such a finding, however, may support "claim arising" venue. In other words, the only limitation the modified test places on the availability of proper venues is that, in comparison to the jurisdiction test, venue would no longer be proper in a district in which, despite the finding of specific jurisdiction, the claim did not arise.

suppose that it thought the familiar words "doing business" were being used in a familiar sense"). It would be analytically inconsistent to hold that, because of its continuous and systematic contacts with a state, a defendant corporation, on the one hand, is subject to service of process in the state for *any* controversy to which it is a party and yet, on the other hand, is not viewed as doing business in the state for venue purposes. Finally, by relying on the unrefined commerce clause analysis, the licensing test only adds confusion to an already complex area of the law.

By providing a plaintiff with a feasible forum and, at the same time preventing inconvenience to the defendant, the modified jurisdiction test strikes a fair balance between the pro-plaintiff jurisdiction test and the pro-defendant licensing test. Under the modified jurisdiction test, a plaintiff can sue a corporate defendant wherever that defendant conducts continuous and systematic business. As a result, a plaintiff can select, in most cases, a forum that, from the plaintiff's viewpoint, is reasonably convenient. A plaintiff is not relegated, in most cases, to suing in the defendant's home forum. At the same time, the defendant does not suffer the inconvenience of having to defend a case in a forum where the defendant has only isolated or casual contacts. And if the defendant does incur some inconvenience in having to defend a case in a district where it does continuous and systematic business, 28 U.S.C. § 1404(a) allows for a change of venue to further both the interests of justice and the convenience of the parties and witnesses. Finally, the modified test is easy to apply. District courts already face the task of determining whether general jurisdiction is present. For these reasons, the court adopts the modified jurisdiction test.[7]

■ The court determines, without hesitation, that Turbo Tek has the continuous and systematic contacts with North Carolina necessary to support general jurisdiction and thus venue. In the last year, Turbo Tek has sold in North Carolina 30,570 of its pressure washers, 24,720 bottles of soft suds, 7,164 bottles of hard suds, 81,678 bottles of exploding wax, and 864 unspecified products. North Carolina accounts for 3.6% if Turbo Tek's total sales, yielding Turbo Tek over $300,000.00 in the last year. Turbo Tek transports these goods directly from its facilities in California to its customers in North Carolina. In addition, Turbo Tek has a sales representative who permanently resides in North Carolina and solicits sales throughout the state. Turbo Tek's Vice President has, on at least one occasion, visited customers within North Carolina. Furthermore, Turbo Tek has run television advertisements on seventeen local television stations in

---

**7.** The Fourth Circuit has not explicitly addressed the proper test for determining "doing business" venue. The two Fourth Circuit cases mentioning "doing business" venue have merely recited the contacts with the forum and then concluded that venue is proper. *See In Re Ralston Purina Co.,* 726 F.2d 1002, 1003 (4th Cir. 1984) (recites contacts and then merely states that "Purina 'is doing business' under 28 U.S.C. § 1391(c)"); *Du–Al Corp. v. Rudolph Beaver, Inc.,* 540 F.2d. 1230, 1231, 1233 (4th Cir.1976) (recites contacts then merely states that "collectively these activities constituted 'doing business'"). Arguably, by explaining that the contacts satisfied personal jurisdiction and then concluding that these same contacts amounted to "doing business", *Du–Al* equates venue and personal jurisdiction. A few cases have interpreted *Du–Al* as equating venue and personal jurisdiction. *See e.g. Precision Rubber Products v. George McCarthy, Inc.,* 605 F.Supp. 473, 477 (M.D.Tenn.1984); *Witzel v. Chartered Systems Corp. of N.Y.,* 490 F.Supp. 343, 348 (D.Minn. 1980). *See also* Note, 65 Tex.L.Rev. at n. 57 and accompanying text (interprets *Du–Al* as equating venue and personal jurisdiction). Yet, a recent case states that *Du–Al* "*might* be said to have adopted this view [i.e. the jurisdiction test] ... although less clearly ... and with less discussion [than the other cases adopting the view]." *Maybelline Co.,* 813 F.2d at 903 n. 5 (emphasis added). Moreover, *Du–Al* was decided before the Supreme Court, in *Leroy,* expressed that venue statutes are designed to protect the defendant from an inconvenient forum. In sum, given the inexplicitness of *Du–Al,* the conflicting interpretations of *Du–Al* by other courts, and the fact *Du–Al* was decided before *Leroy,* this court may appropriately attempt to refine the "doing business" standard in this circuit. As such, the court herein adopts the modified jurisdiction test. The court notes, however, that venue is proper in the instant case under either the jurisdiction or the modified jurisdiction test.

**576**

North Carolina. Finally, Turbo Tek operates a mail order business, under the name Distribution Systems International, that has received and honored mail orders from North Carolinians. The court, accordingly, concludes that under the modified jurisdiction test Turbo Tek is "doing business" in North Carolina, thereby establishing venue under § 1391(c).[8]

### CONCLUSION

The court concludes that plaintiff complied with Fed.R.Civ.P. 4(c)(2)(C)(ii) in personally serving defendant, outside the forum state, with notice of this action. The court further concludes that defendant is "doing business" in North Carolina and thus venue is proper under 28 U.S.C. § 1391(c). The court, accordingly, denies defendant's motion to dismiss.

---

**8.** Because the court finds venue proper under § 1391(c), it will not address whether the claims herein arose in North Carolina. *See* 28 U.S.C. § 1391(b).