### In re CITY OF PHILADELPHIA LITIGATION.

### In re Eulissa HAMPTON.

### In re Claire LEAK.

**Civ. A. Nos. 86–2833, 86–2834. Master File No. 85–2745.**

United States District Court, E.D. Pennsylvania.

Dec. 28, 1988.

---

See also, D.C., 123 F.R.D. 512, and, D.C., 123 F.R.D. 521.

Thomas A. Sprague, Philadelphia, Pa., Michael A. Fenasci, New Orleans, La., for plaintiff.

Carl Oxholm, III, Philadelphia, Pa., for defendant.

OPINION

LOUIS H. POLLAK, District Judge.

Presently before the court are the City's motions to dismiss these actions based on plaintiffs' alleged failure to accomplish service in accordance with Rule 4(j) of the Federal Rules of Civil Procedure. These motions were submitted to Magistrate William F. Hall, Jr., for the preparation of a Report and Recommendation. Magistrate Hall, finding that "City defendants' counsel had actual notice of these actions," and that plaintiffs relied on their good faith belief that the Deputy City Solicitor "was authorized to accept service," recommended that the motions be denied. Report and Recommendation, at 5.

The City of Philadelphia filed their first set of objections to the Report in August, 1988. Plaintiffs Leak and Hampton subsequently moved to enlarge time to perfect service pursuant to Rule 6(b) of the Federal Rules of Civil Procedure, and the City submitted an opposing memorandum.[1] Since the Magistrate's Report, the parties have submitted supplemental memoranda on the service issue and presented oral argument to the court. By leave of the court, the City of Philadelphia filed a consolidated memorandum in support of several motions to dismiss for lack of service in this and other cases in this master file.

*Factual Summary*

Plaintiffs filed these actions on May 13, 1986, naming as defendants the State of Pennsylvania, the City of Philadelphia, and six present and former city officials and employees ("individual defendants"), W. Wilson Goode, Leo A. Brooks, Gregory Sambor, William Richmond, Frank Powell, and William Klein. On October 7, 1986, the plaintiffs filed amended complaints.

Plaintiffs allege that the City's Chief Deputy Solicitor, Carl Oxholm, III, represented that he was authorized to accept service of plaintiffs' complaints on behalf of the City and the individual defendants.

---

1. A similar motion had already been filed on    behalf of Leak in May, 1988.

Mr. Oxholm disputes this allegation, and both parties have submitted affidavits in support of their positions. Plaintiffs further allege that Mr. Oxholm was personally served with plaintiffs' original and amended complaints on September 24, 1986, and October 6, 1986, respectively. The plaintiffs did not serve a summons on the City, or on any of the individual defendants, or on counsel.

### Magistrate Hall's Report and Recommendation

Magistrate Hall found that Mr. Oxholm, "at the very least ... had actual notice of these actions." In Magistrate Hall's view, this notice, taken with plaintiffs' "good faith belief that [Mr. Oxholm] was authorized to accept service," constituted "good cause" within the meaning of Fed.R.Civ.P. 4(j), which provides:

> **Summons: Time Limit for Service.** If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

Accordingly, Magistrate Hall recommended that the motions to dismiss be denied.

### The City's Objections

The City raises several objections to the Magistrate's Report and Recommendation. First, the City contends that the Magistrate erred in treating the motions to dismiss as though they had been filed by *all* the defendants. The City asserts that it is the only moving party, and that none of the other defendants has either entered an appearance in these actions or received a copy of the complaint. These facts are significant, in the City's view, because they suggest that there is no basis for concluding that the individual defendants are even aware of these particular suits. For this reason, the City maintains that the Magistrate's rationale for recommending that plaintiffs' claims not be dismissed—that, via Mr. Oxholm, defendants had actual notice of these actions—should not be extended to those individual defendants who have never been advised of the suits against them.

The City's second objection centers on the Magistrate's factual finding that the plaintiffs relied in "good faith" on their belief that Mr. Oxholm was authorized to accept service on behalf of the City. Mr. Oxholm denies making any representation to plaintiffs that he was authorized to accept service on behalf of any defendants. Further, the City contends that the plaintiffs have offered no documents on which to base a finding of "good faith." In particular, the City cites the plaintiffs' failure to send any correspondence confirming their understanding that service was accomplished.

The City's third objection is that even if Mr. Oxholm represented that he was authorized to accept service on behalf of the City, the plaintiffs never accomplished service because Rule 4(a) requires that service include a summons. Without service of a summons, the City argues, "a defendant is under no duty to act and a court is without jurisdiction over the defendant." City Objections, at 3. Thus, the City concludes that the plaintiffs not only attempted to serve a person unauthorized to accept service, but also served that person ineffectively.

Lastly, the City contends that this court can find "good cause" for plaintiffs' failure to accomplish service only if it finds that the plaintiffs were diligent in their efforts to accomplish service once they were on notice that their original efforts to serve defendants were defective. The City argues that the plaintiffs were on notice that service was defective no later than April, 1988, when the City filed its motion to dismiss. The City further contends that the plaintiffs have not been diligent in correcting service since that time, and, hence, are unable to seek protection via the "good cause" provision of Rule 4(j).

## Discussion

The central issue in the City's motions to dismiss [2] is whether plaintiffs have shown "good cause" within the meaning of Rule 4(j) for failing to serve the defendants in these actions. In addressing plaintiffs' arguments, I am mindful that the Court of Appeals for the Third Circuit has taken a strict approach toward the Rule, consistently upholding dismissals of actions where there has not been meticulous effort to comply with its service provisions. *See, e.g., Napier v. Thirty or More Unidentified Federal Agents,* 855 F.2d 1080, 1088 n. 4 (3d Cir.1988); *Braxton v. United States,* 817 F.2d 238 (3d Cir.1987); *Stranahan Gear Company, Inc. v. NL Industries, Inc.,* 800 F.2d 53, 56 (3d Cir.1986). Underlying the court's strict approach is the recognition that Congress's shift from service by federal marshals to private individuals in 1982 [3] would prove unworkable if the service provisions were treated casually or informally. Accordingly, the Court of Appeals has construed the good cause provision narrowly, as protecting only those "diligent plaintiffs who, *though making every effort to comply with the dictates of the rule,* nonetheless exceed the 120–day limit for service." *Green v. Humphrey Elevator and Truck Company,* 816 F.2d 877, 880 (3d Cir.1987) (emphasis added).

The plaintiffs' asserted basis for failing to serve the defendants is that Mr. Oxholm represented that he was authorized to accept service on the defendants' behalf. The plaintiffs further maintain that the City's actual notice of the litigation, as well as Mr. Oxholm's receipt of the plaintiffs' pleadings, makes dismissal under Rule 4(j) inappropriate, because "[a]ctual notice ... is of paramount importance to the scheme contemplated for Rule 4." *Green v. Humphrey Elevator and Truck Company,* 816 F.2d 877, 831 (3d Cir.1987). Finally, plaintiffs argue that the City's failure to object to service until over a year after the complaints were filed estops the City from claiming defects in service at this late date.

■ Assuming, for purposes of argument, that Mr. Oxholm did in fact represent that he was authorized to accept service on behalf of the City defendants, plaintiffs have failed to explain why they did not properly serve Mr. Oxholm. Delivery of a copy of the complaint does not suffice to complete service. As the language of Rule 4(j) makes clear, the defendant must also be served with a *summons. See, e.g., Israel v. United States,* Civil Action 86–6691, slip op. at 3 (E.D.Pa. November 12, 1987) [1987 WL 14697] (dismissing plaintiff's claim, even though complaint was mailed to defendant, because no summons was served "as required by the express wording of the Federal Rule of Civil Procedure").

■ The plaintiffs' allegation that service was accomplished by hand-delivery of their complaints to Mr. Oxholm suggests a misapprehension of the express service requirements of Rule 4(j). The plaintiffs have offered no explanation for failing to deliver a summons to any party or counsel in this litigation. In the absence of such an explanation, plaintiffs' failure to effect service seems attributable to inadvertence on the part of counsel. Such inadvertence cannot provide a basis for finding "good cause" or for permitting an extension of time to effect service. *Braxton v. United States,* 817 F.2d 238, 241 (3d Cir.1987) ("In-

---

**2.** The City is in fact the only movant in these actions. Nonetheless, in accordance with Rule 4(j), this court may consider *sua sponte* whether the actions against the individual defendants should be dismissed for lack of service. Because the facts relevant to the disposition of the City's motion are identical to those underlying the service claims of the individual defendants, this opinion will resolve the Rule 4(j) issue as it relates to all defendants. Ordinarily, a court acting on its own motion should not determine whether service has been adequately effected without affording the plaintiff an opportunity to show cause. In these cases, however, plaintiffs have raised and responded to arguments concerning the service of all the defendants, including the individual defendants. It is therefore unnecessary for this court to hold a separate show cause hearing before deciding whether to dismiss the claims against the individual defendants for lack of service.

**3.** Congress adopted Rule 4(j) as part of the Federal Rules of Civil Procedure Amendments Act of 1982, Pub.L. No. 97–462, 96 Stat. 2527.

advertence of counsel does not amount to good cause....") (citing *Wei v. Hawaii*, 763 F.2d 370, 372 (9th Cir.1985)); *Lovelace v. Acme Markets, Inc.*, 820 F.2d 81, 84 (3d Cir.) ("[W]hen a delay is the result of inadvertence of counsel, it need not be excused."), *cert. denied*, ─── U.S. ───, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987).

Nonetheless, plaintiffs argue that their failure to effect service of process should not result in dismissal because defendants had actual notice of the actions and suffered no prejudice. Although plaintiffs are correct in their assertion that "actual notice" is the goal animating the service provisions of Rule 4(j), it does not follow that actual notice provides an exception to the service requirements under the Rule. *See, e.g., Stranahan Gear Company v. N.L. Industries, Inc.*, 800 F.2d 53, 56–57 (3d Cir.1987) (" 'When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process. But the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored.' ") (quoting *Armco, Inc., v. Penrod–Stauffer Building Systems, Inc.*, 733 F.2d 1087, 1089 (4th Cir.1984)). Other cases similarly hold that while proper service secures actual notice, actual notice is not a substitute for proper service. *See, e.g., Davis–Wilson v. Hilton Hotels Corporation*, 106 F.R.D. 505, 508 (E.D.La.1985) ("The mere fact that a defendant received actual notice is not sufficient if there has not been compliance with the plain requirements of Federal Rules of Civil Procedure."); *Bryant v. Rohr Industries, Inc.*, 116 F.R.D. 530, 533 (W.D.Wash.1987) ("[I]t is clear that defendant ... is aware of the plaintiff's lawsuit. Nevertheless, ignorance of the law is no excuse, and plaintiff has not shown good cause for his failure to perfect service."). Plaintiffs' reference to *Jordan v. United States*, 694 F.2d 833, 836 (D.C.Cir.1982), in

which the court refused to dismiss a suit against the United States on the basis of a technical defect in service, is inapposite, inasmuch as the case antedates the amendment of Rule 4 and Congress's adoption of stricter standards for service. *See* Siegel, *Practice Commentary on Amendment of Federal Fed.R.Civ.P. 4 (Eff. Feb. 26, 1983) with Special Statute of Limitations Precautions*, 96 F.R.D. 88, 109 (1983) ("The lesson to the practitioner is not to expect the solicitous attitude the courts may have manifested about service defects when the marshals ran the store.").[4]

Nor is plaintiffs' argument concerning the absence of prejudice to defendants persuasive. To begin with, the "absence of prejudice" argument collapses into plaintiffs' "actual notice" argument, because plaintiffs rely on defendants' actual notice as the basis for demonstrating absence of prejudice. Thus, the cases cited above that reject actual notice as a sufficient bar to dismissal are equally applicable to plaintiffs' argument concerning prejudice. More importantly, if absence of prejudice were a recognized ground for avoiding the dismissal sanction of Rule 4, the service scheme contemplated by the Federal Rules would be severely undermined. Counsel representing plaintiffs would have an incentive to use simpler and less formal modes of communication, perhaps even telephone calls, to insure that a defendant or defendant's counsel receives "actual notice" of a lawsuit. Then, if service were later found to be defective, plaintiffs could rely on an absence of prejudice. Indeed, if actual knowledge were regarded as sufficient, plaintiffs would have no incentive to provide their adversaries with summonses at all; if defendants were to challenge service, plaintiffs could expect to defeat the challenge by proving actual knowledge at a fact-finding hearing. On this point, the Third Circuit's reasoning in rejecting a liberal construction of the service-by-mail pro-

---

**4.** In addition, the defect complained of in *Jordan* was far less egregious than the defect in these actions. The *Jordan* plaintiffs, using the United States Marshal's office, served summonses and complaints on the Attorney General rather than on the United States Attorney. The court found that the failure to effect proper service was "not fault attributable to [plaintiffs]" and that plaintiffs' attorney had "done everything expected of him in attempting to effect proper service on the United States." 694 F.2d at 834, 836.

vision, Fed.R.Civ.P. 4(c)(2)(C)(ii), is pertinent. The court declined to deem service complete on defendant's receipt of process sent by mail unless defendant returns an acknowledgment of service. The court reasoned that if receipt of process were sufficient to complete service, without acknowledgment by defendant, district courts would be called upon to resolve a great number of disputes in which the parties disagreed on whether defendant actually received process. Accordingly, the court found that acquiescence in a flexible approach to service would be likely to "unnecessarily burden the parties and the courts with discovery requests and evidentiary hearings whenever there is a dispute." *Green v. Humphrey Elevator and Truck Co.*, 816 F.2d 877, 881 (3d Cir.1987) (citation omitted). Rather than arbitrate such disputes, the Circuit chose the "better approach [of] requir[ing] personal service upon the defendant." *Id.*

Indeed, plaintiffs' arguments about notice and prejudice misdirect judicial attention from the core issue in service disputes: plaintiffs' diligence. When the Court of Appeals has upheld extensions of time for improper service, it has required a showing of care and attentiveness on the part of counsel. *See, e.g., Dominic v. Hess Oil V.I. Corporation*, 841 F.2d 513, 517 (3d Cir.1988) (noting that although time limit in Rule 4(j) is not "absolutely inflexible," a finding of good cause "require[s] at least as much as would be required to show excusable neglect.") (citing *Braxton v. United States*, 817 F.2d 238, 241 (3d Cir. 1987)). Courts which have considered prejudice to defendants in deciding whether to dismiss for improper service have done so "only after finding that plaintiff had been diligent in attempting to make service." *Koppelman v. Schaller*, Civil Action 87–7912, slip op. at 9 (S.D.N.Y. September 15, 1988) [1988 WL 98781] (citing *Delicata v. Bowen*, 116 F.R.D. 564, 566 (S.D.N.Y. 1987)).

The plaintiffs' final argument is that the City should not benefit by having withheld its objection to service until after the expiration of the limitations period. This argument is without merit. Rule 4(j) mandates dismissal even if the applicable limitations period has run on plaintiffs' claims. *See, e.g., Lovelace v. Acme Markets*, 820 F.2d 81 (3d Cir.1987). A defendant is under no obligation to register objections to service early enough to preserve a plaintiff's claims. So to hold would render toothless the dismissal sanction mandated by the Rule. Moreover, it would be anomalous to impose a deadline for objecting to service on parties who are, by hypothesis, not properly subject to the court's authority.

■ As to the plaintiffs' motions to enlarge time to perfect service under Fed.R. Civ.P. 6(b), plaintiffs offer no ground for excusing their failure to perfect service within the 120–day period. Although this court has the power to entertain such a motion after the 120–day limit has expired, the court may not grant such a motion unless plaintiffs demonstrate "excusable neglect." Rule 6(b); *Braxton v. United States*, 817 F.2d 238, 241 (3d Cir.1987). Excusable neglect may be found only where there is " 'a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules.' " *Dominic v. Hess Oil V.I. Corporation*, 841 F.2d 513, 517 (3d Cir. 1988) (quoting Wright & Miller, Federal Practice and Procedure, § 1165 (1987)). Since plaintiffs have not offered a reasonable basis for noncompliance, their motions for enlargement of time will be denied.

Finally, plaintiffs contend that dismissing these actions on a technicality would not be in the interests of justice. I recognize that the litigation of which these cases form a part is of great importance both to the parties directly involved and also to the wider Philadelphia community. Moreover, as a general matter, it is certainly desirable that controversies which require judicial disposition be adjudicated on their merits. But resort to the courts presupposes full compliance with those procedural rules that are fundamental. Rule 4(j) is such a rule. *Stranahan Gear Company v. NL Industries, Inc.*, 800 F.2d 53, 57 (1986) ("We do not believe that 'factors of justice and equity' can override the unambiguous terms of

a specific service rule."). In this instance, I find no basis for exempting plaintiffs from the Rule. Accordingly, I am persuaded that the City's motions to dismiss should be granted. For the same reasons, the claims against the individual defendants should also be dismissed. *See supra* note 2.